# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| VISUAL EDGE, INC. d/b/a ZENO IMAGING and TLC OFFICE SYSTEMS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 4:20-cv-04220 |
| | : | |
| CASEY VAUGHAN, SCOTT COPELAND, RENEE RANDLE, DIANE ROBERTS, ALFREDO FIGUEROA, BRIAN WALKER, and IMPACT NETWORKING TEXAS, LLC, collectively, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT SCOTT COPELAND'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Scott Copeland ("Defendant" or "Copeland"), by and through his attorneys, Howard & Howard Attorneys PLLC, answers Plaintiff Visual Edge, Inc. ("Visual Edge") d/b/a Zeno Imaging ("Zeno Imaging") and TLC Office Systems' ("TLC") (collectively, "Plaintiff" or "Zeno") Complaint as follows:

### A.    NATURE OF ACTION

1.    This action is based on the Individual Defendants' multiple breaches of their respective Non-Disclosure and/or Non-Compete Agreements signed with Plaintiff (the "Agreements"); Impact Networking's knowing and intentional interference with the Agreements; Copeland and Vaughan's knowing and intentional interference with Zeno's business relations; Copeland and Vaughan's knowing and intentional violation of their fiduciary duties owed to Zeno; and the misappropriation and/or threatened misappropriation of Zeno's confidential, proprietary, and highly sensitive trade secret and other business information by all Defendants.

### ANSWER:

Defendant denies the allegations in this paragraph.

2.     This action seeks to halt Defendants' collective scheme and concerted effort, spear-headed by Copeland and Vaughan, to raid Plaintiff of top talent and usurp its corporate opportunities in the form of customer relationships and employees by leveraging Zeno's Confidential Information—learned <u>during the course of the Individual Defendants' former employment</u>—to benefit Plaintiff's direct Texas competitor and former business partner, Impact Networking.

**ANSWER:**

Defendant denies the allegations in this paragraph.

3.     Plaintiff, through the use of trade names such as Zeno Imaging and TLC in various Texas markets, is engaged in the business of, among other things, selling, leasing and servicing office equipment and systems and provides full-service IT management, including remote monitoring and administration of networks, service desk, and data backup, to support managed IT and print services, IT hardware and software, and communication and data needs.

**ANSWER:**

Defendant denies the allegations in this paragraph.

4.     Copeland was a key member of Zeno's executive leadership team and sales force, serving as Vice President and Vice President of Professional Services at Zeno until becoming President and Partner of Defendant Impact Networking in November 2020. Vaughan was also a key member of Zeno's executive leadership team and sales force, serving as Vice President of Marketing, Central Texas Branch Manager, Director of Sales, and eventually Vice President of Sales until he recently became Chief Operating Officer and Partner at Impact Networking in November 2020.

**ANSWER:**

Defendant denies the allegations in this paragraph.

5.     Likewise, Defendant Roberts, a former Enterprise Account Executive, Defendant Figueroa, a former Managed IT Solutions Sales Specialist, Defendant Randle, a former Sales Operations, Process and Funding Manager/Sales and Billing Coordinator/Sales Analyst, and Defendant Walker, a former TLC Managed IT Solutions Sales Specialist, were central members of Zeno's Managed IT Solutions team and general sales force, all of whom resigned in concert after Copeland and Vaughan left Zeno to immediately begin employment with Impact Networking.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

6.    Figueroa joined Defendant Impact Networking as a Senior Account Manager in November 2020, Roberts joined as a Senior Account Manager in December 2020, Randle joined as Office Coordinator in December 2020, and Walker joined as Senior Account Manager in December 2020.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

7.    Following the Individuals Defendants' abrupt and synchronized departures from their employment with Zeno, Copeland and Vaughan, upon information and belief, began and continue to lead a raid of Zeno's employees—soliciting and recruiting their former colleagues and key Zeno employees for employment at Impact Networking. Further, this raid has been perpetrated by Copeland and Vaughan, upon information and belief, through the misappropriation of Zeno's Confidential Information for their own benefit and the benefit of their new employer, Defendant Impact Networking. These acts by Copeland and Vaughan constitute multiple, direct violations of their respective Non-Disclosure and Non-Competition Agreements with Zeno, and have to date resulted in material and compensable losses to Zeno's customer relationships, competitive position, good will, and bottom line. If not enjoined, these unlawful acts will continue to decimate Zeno's business, particularly in the current COVID-19 pandemic environment that continues to present its own set of challenges to Zeno and its industry counter-parts.

**ANSWER:**

Defendant denies the allegations in this paragraph.

8.    In addition to their violative acts of deliberately poaching Zeno's employees, Copeland and Vaughan, upon information and belief, remain in possession of Confidential Information belonging to Zeno. Indeed, neither Copeland nor Vaughan possessed a company laptop or phone during the course of their employment, but rather conducted all Zeno-related business on their personal devices. Copeland and Vaughan's maintenance and use of such Confidential Information on their personal devices constitutes a violation of their Agreements and post-employment obligations to Zeno.

**ANSWER:**

Defendant denies the allegations in this paragraph.

9.    Roberts, Figueroa, and Walker each agreed in their respective Non-Disclosure and Non-Competition Agreements with Plaintiff (Zeno Imaging in the case of Roberts and Figueroa) and TLC in the case of Walker) to certain reasonable post-employment covenants obligating them

not to engage in certain actions on behalf of a competitor like Impact Networking. Further, Roberts misappropriated Confidential Information belonging to Zeno by failing to return company materials and files following the termination of her employment, which also constitutes a violation of her Agreement with Zeno. Similarly, Figueroa, upon information and belief, deleted evidence from his Zeno-issued phone and laptop, which demonstrates an intent to conceal his unlawful use and disclosure of Zeno's Confidential Information in clear violation of his Agreement with Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

10.    Upon information and belief, Randle, in coordination with the Individual Defendants, has likewise misappropriated Confidential Information belonging to Zeno to her personal benefit and the benefit of Impact Networking, which constitutes a violation of her Agreement with Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

11.    Upon information and belief, the Individual Defendants have participated in the solicitation of—or intend to solicit—Plaintiff's key customers and prospects using Plaintiff's Confidential Information; have otherwise improperly disclosed and/or used Plaintiff's confidential, proprietary, and highly sensitive business information; have improperly traded upon Plaintiff's goodwill and business relationships for their own benefit and the benefit of Impact Networking; and have unlawfully competed and intend to continue unlawfully competing against Plaintiff, in direct violation of their Agreements and Plaintiff's statutory and common law rights.

**ANSWER:**

Defendant denies the allegations in this paragraph.

12.    Impact Networking, upon information and belief, is and has been aware of the Individual Defendants' respective Agreements with Plaintiff, and their post-employment obligations associated therewith. Further, Impact Networking, upon information and belief, is and has been aware of the aforementioned violative actions of the Individual Defendants described in Paragraphs 1 through 11, and, upon information and belief, has intentionally encouraged and facilitated (i) the misappropriation of Plaintiff's confidential, proprietary, and highly sensitive business information for its own benefit, as well as (ii) the infiltration and pilfering of Plaintiff's key employees and customers to gain an unfair competitive industry advantage.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

 **B.** **THE PARTIES**

13. Plaintiff Visual Edge, Inc. is a Delaware Corporation that operates under the Zeno Imaging and TLC brands throughout the state Texas and is the former employer to the Individual Defendants. Plaintiff maintains its principal place of business at 3874 Highland Park Northwest, North Canton Ohio, 44720.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

14. Defendant Vaughan is a former Vice President of Marketing, Central Texas Branch Manager, Director of Sales, and Vice President of Sales at Zeno Imaging, who was employed by Plaintiff from in or around August 2013 through December 2019. Vaughan is a citizen and domiciliary of the State of Texas last known to reside at 4015 Alba Rd., Houston, Texas, 77018.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

15. Defendant Copeland is a former Vice President and Vice President of Professional Services at Zeno Imaging, who was employed by Plaintiff from in or around April 2009 through September 2020. Copeland is a citizen and domiciliary of the State of Texas last known to reside at 102 Bel Lago Cove, Austin, Texas, 78734.

**ANSWER:**

Defendant denies the allegations in this paragraph.

16. Defendant Randle is a former Sales Operations, Process and Funding Manager/Sales and Billing Coordinator/Sales Analyst at Zeno Imaging, who was employed by Plaintiff from on or about April 27, 2015 to November 3, 2020. Randle is a citizen and domiciliary of the State of Texas last known to reside at 8915 Driftstone Dr., Spring, Texas, 77379.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

17.     Defendant Roberts is a former Enterprise Account Executive at Zeno Imaging, who was employed by Plaintiff from on or about June 5, 2012 to November 30, 2020. Roberts is a citizen and domiciliary of the State of Texas last known to reside at 3919 Fordham Park Ct., Houston, Texas, 77058.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

18.     Defendant Figueroa is a former Managed IT Solutions Sales Specialist at Zeno Imaging, who was employed by Plaintiff from on or about May 20, 2019 to November 17, 2020. Figueroa is a citizen and domiciliary of the State of Texas last known to reside at 4636 Cornish Street, Houston, Texas, 77007.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

19.     Defendant Walker is a former Managed IT Solutions Sales Specialist at TLC, who was employed by Plaintiff from on or about March 4, 2019 to November 2020. Walker is a citizen and domiciliary of the State of Texas last known to reside at 11301 Misty Morning Street, Pearland, Texas, 77584.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

20.     Defendant Impact Networking, LLC is a limited liability company organized and incorporated in the State of Illinois, maintaining its principal place of business at 13875 W. Boulton Blvd, Lake Forest, Illinois, 60045, and transacting business in this judicial district through its sales and/or managerial representatives including, upon information and belief, the Individual Defendants. Impact Networking maintains a field services location in Houston, located at 5825 North Sam Houston Parkway W., Suite 500, Houston, Texas 77086, and is a direct competitor of Plaintiff in Texas, and specifically in the Houston metropolitan marketplace.

**ANSWER:**

This paragraph is directed to a nonparty. To the extent an answer is required, the allegations in this paragraph are denied.

21.    Upon information and belief, as of November 2020, Defendant Vaughan is the Chief Operating Officer and a Partner at Impact Networking (Houston).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

22.    Upon information and belief, as of November 2020, Defendant Copeland is the President and a Partner at Impact Networking (Houston).

**ANSWER:**

Defendant admits the allegations in this paragraph.

23.    Upon information and belief, as of November 2020, Defendant Randle is the Office Coordinator at Impact Networking (Houston).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

24.    Upon information and belief, as of December 2020, Defendant Roberts is a Senior Account Manager at Impact Networking (Houston).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

25.    Upon information and belief, as of November 2020, Defendant Figueroa is a Senior Account Manager at Impact Networking (Houston).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

26.    Upon information and belief, as of December 2020, Defendant Walker is a Senior Account Manager at Impact Networking (Houston).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

C.    **JURISDICTION AND VENUE**

27.    This Court has subject matter jurisdiction over this matter pursuant to § 28 U.S.C. § 1331 because this Complaint includes claims for Defendants' violations of the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1832, *et seq.,* a federal statute.

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.

28.    Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b), as it is the district in which, inter alia, the conduct complained of arose, the injury complained of is being inflicted, and a substantial part of the events giving rise to the claims alleged herein occurred. Venue is also proper in the Southern District of Texas pursuant to enforceable forum selection clauses in the Individual Defendants' Agreements. (*See* **Exhibits A-1 to A-3**, at ¶ 17; **Exhibits A-4 to A-5**, at ¶ XIII; **Exhibit A-6**, at ¶ 15.).

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.  To the extent an answer is required, Defendant does not contest venue.

D.    **THE FACTS**

29.    Plaintiff is engaged in the business of, among other things, selling, leasing and servicing office equipment and systems, including stand alone and/or interconnected and integrated systems for digital and analog copiers, printers, telecopiers, print-on-demand services, networking facilities management, document outsourcing, technical support services, equipment maintenance, systems analysis, supplies, and other office equipment and related services and products.

**ANSWER:**

Defendant denies the allegations in this paragraph.

30.    Plaintiff maintains Zeno Imaging branch offices in Houston and Austin, through which Plaintiff conducts business with and for Zeno customers, which, in turn, conduct business in Texas and outside the state of Texas.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph and thereby denies them.

31.    The aforementioned Houston and Austin branch offices were acquired by Plaintiff in late 2018 through its purchase of the assets of the business formerly known as Zeno Digital Solutions, LLC ("ZDS"), which purchase included but was not limited to, all of ZDS's rights and obligations under employment contracts with its employees like Copeland and Vaughan, and all of the intellectual property and the benefit of the substantial investment ZDS had made in the development of its business.

**ANSWER:**

Defendant denies the allegations in this paragraph.

32.    Plaintiff similarly maintains TLC branch offices in Angleton, Austin, Longview, Texarkana, and Tyler, through which Plaintiff conducts business with and for TLC customers, which, in turn, conduct business in Texas and outside the state of Texas.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph and thereby denies them.

33.    In connection with the development of its Zeno Imaging, TLC, and other business, Plaintiff expended substantial time, labor, and money to research and develop skills, methods, techniques, plans, programs, processes, data, and forms that, singularly and collectively, constitute Plaintiff's trade secrets and confidential information.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

34. Furthermore, Plaintiff spends a significant amount of time and resources in developing and maintaining information regarding its secrets, clients, and potential clients. Indeed, Plaintiff's business as Zeno Imaging, TLC, and other brands has been built on trust, goodwill, and client satisfaction over a long period of time.

**ANSWER:**

Defendant denies the allegations in this paragraph.

**(a)    COPELAND AND VAUGHAN**

35. From in or around August 2013 through December 2019, Defendant Vaughan served in various executive roles at Zeno, most recently as the Vice President of Sales.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

36. From in our around April 2009 through his departure in September 2020, Defendant Copeland similarly served in various executive roles, most recently as both Zeno's marketplace Vice President in Central Texas and Vice President of Professional Services.

**ANSWER:**

Defendant denies the allegations in this paragraph.

37. In their roles as top-level Zeno executives, who held various key roles at Zeno throughout their tenure at the company, Vaughan and Copeland orchestrated, coordinated, and developed Zeno's sales efforts and customer relationships throughout the State of Texas and across multiple municipalities, including but not limited to, Houston, Austin, and Dallas.

**ANSWER:**

Defendant denies the allegations in this paragraph.

38.     By virtue of their respective roles as Director and Vice President of Sales and Vice President and VP of Professional Services, Vaughan and Copeland both had access to Zeno's entire customer list, including active customers and key prospects, and gained familiarity with a large set of Zeno's customers, over a broad swath of geography, because they would be consulted whenever a Zeno customer was interested in purchasing or leasing a print production machine or professional services offered by Zeno, and they would often set strategy and pricing in connection with customers' print production and/or managed IT services needs.

**ANSWER:**

Defendant denies the allegations in this paragraph.

39.     Vaughan resigned from Zeno in or around December 2019, and commenced employment with another company. More recently, however, Vaughan joined Copeland at Zeno's competitor, Impact Networking in or around November 2020.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

40.     Copeland resigned from Zeno in or around September 2020, and commenced employment with Impact Networking shortly thereafter in or around November 2020.

**ANSWER:**

Defendant denies the allegations in this paragraph.

41.     As a result of their employments with Zeno, however, Copeland and Vaughan developed familiarity with customer profiles and sales plans with respect to the actual and prospective customers Zeno services and/or manages and gained unlimited access to the confidential database to which they were granted access in connection with their executive duties and responsibilities at Zeno.

**ANSWER:**

Defendant denies the allegations in this paragraph.

42.     Indeed, by virtue Vaughan's executive position as Director and Vice President of Sales and Copeland's executive position as Vice President and Vice President of Professional

Services, Copeland and Vaughan had virtually unlimited access to Zeno's customer list, including but not limited to detailed information concerning all of Zeno's actual customers and active prospects.

**ANSWER:**

      Defendant denies the allegations in this paragraph.

43.     As a result of their employment and the authorization provided to them by Zeno, Copeland and Vaughan gained access to Zeno's books and records, the confidential information contained therein, and especially: (a) the identity of Zeno's customers, and potential customers they had solicited and/or profiled, including their names and addresses, management executives, account managers and/or contact persons, current business terms and transactions, transaction histories, purchasing and servicing requirements, costs and prices, contract and leasing terms, contract and leasing cycles, equipment and systems specifications, packaging features, profitability considerations, open sales opportunities, cost sensitivities, growth plan, distribution and delivery systems, training techniques, and business efficiencies; (b) Zeno's key personnel, including the sales revenue generated, performance, product knowledge, and clientele; (c) Zeno's marketing strategies, pricing and packaging structure, schedules and strategies, product design, features and initiatives, discount policies, future business plans, vendor identities, training techniques, strengths and weaknesses with its customers, and a wide range of profitability and cost considerations; and (d) other business and customer-related information that provides Zeno with a significant advantage or "head start" over its competitors.

**ANSWER:**

      Defendant denies the allegations in this paragraph.

44.     More specifically, the confidential customer lists, records, and databases that Zeno laboriously compiled, and to which Copeland and Vaughan had unfettered access and use on behalf of Zeno to obtain and utilize significant advantages in the sales process, includes some combination or all of the following information:

      (a)    customer identities, classifications, and profiles;

      (b)    customer addresses, phone numbers, locations, and site-specific personnel information;

      (c)    customer purchasing agents, organizational structure, supervisors and account managers, political sensitivities, and other organizational considerations;

(d)     past customer purchases and leases of copiers, printers, facsimile machines, servers, networks, multi-functional devices, and other office equipment, including their age, makers, model numbers, product characteristics and capabilities, special functions, and uses;

(e)     the prices paid by the customer;

(f)     the revenue levels and profitability considerations associated with each customer;

(g)     the discount terms and conditions applicable to any given copier, printer, facsimile machine, or other office equipment product;

(h)     the contract terms for each copier, printer, facsimile machine, or other product purchased by the customer;

(i)     the terms, length and expiration dates of the customers' lease and service agreement contracts for each product in the customers' offices and inventory;

(j)     customer preferences, needs, priorities, business plans, budgets, and special business considerations;

(k)     sales proposal terms, plans, and strategies;

(l)     summaries and notations of past communications with customers reflecting customer inquiries, requests for proposals, quotes, and product capabilities;

(m)     special cost, delivery, and service considerations;

(n)     dates of past sales calls, future appointments, and recognized sales prospects or other follow-up opportunities;

(o)     the customers' business cycles, schedules, buying patterns, and purchasing considerations;

(p)     business characteristics relevant to the business of any given customer and/or the sensitivities, needs, priorities, and concerns of their purchasing representatives;

(q)     the customers' different location considerations, usages, volume, production levels, and requirements;

(r)     dates on which future sales calls were invited, suggested, or would otherwise be appropriate as a matter of timing or invitation;

(s)     credit and payment terms, payment schedules, financing terms, and past credit histories;

(t)     customer complaints, concerns, and the strengths and weaknesses of Zeno's performance and standing with customers, the reasons therefore, and proposed strategies to take advantage of the strengths, resolve the weaknesses, etc.;

(u)     the configurations and compatibilities of the customers' equipment, work-flow, command stations, networking and interconnectivity possibilities, usages, needs and potential sales opportunities; and

(v)     numerous other customer characteristics and variables facilitating the sales process and promoting Zeno's ability to package a successful sale.

**ANSWER:**

Defendant denies the allegations in this paragraph.

45.     The customer information compiled in Zeno's customer database is valuable information that gives Zeno a significant competitive advantage in developing effective marketing strategies and sales proposals to customers.

**ANSWER:**

Defendant denies the allegations in this paragraph.

**(b)     RANDLE, ROBERTS, FIGUEROA, AND WALKER**

46.     From in or around April 2015 to November 2020, or for almost six (6) years, Randle was both a Sales Operations, Process and Funding Manager and Sales Billing Coordinator and Sales Analyst for Zeno. In her roles, Randle audited approximately 500 sales orders per quarter, interfaced with multiple leasing companies for all sales transactions, analyzed and evaluated Zeno's sales team's performance and productivity across *all U.S. markets*, developed processes and training manuals for sales teams across *all U.S. markets*, and worked on team designing and implementing Enterprise Content Management (ECM) for Zeno's Customer Equipment Ordering System. Additionally, Randle dealt closely with accounts payable, overseeing invoicing of a large swath of Zeno's clients. Randle resigned from Zeno on or around November 3, 2020, and joined Impact Networking shortly thereafter.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

47.     From in or around June 2012 to December 2020, or for almost nine (9) years, Roberts was an Enterprise Account Executive at Zeno. In her role, she was responsible for

managing the business relationships of enterprise accounts, while promoting managed services for both internal and outsources processes and functions intended to improve Zeno's business operations, reduce business risk, and provide a predicable expense model for business technology. Roberts resigned from Zeno on or around November 30, 2020, and commenced employment with Impact Networking a few days later in December 2020.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

48.    From in or around May 2019 to November 2020, or for almost two (2) years, Figueroa was a Managed IT Solutions Specialist at Zeno. Likewise, from in or around March 2019 to December 2020, or almost two (2) years, Brian Walker was a Managed IT Solutions Sales Specialist for Plaintiff at TLC.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

49.    In their roles, Figueroa and Walker were responsible for selling and integrating Zeno's innovative business technology and services, namely its IT Print and Managed Network services, to existing and prospective clients in the Texas marketplace. Their responsibilities also included prospecting clients to convert to sales, developing and maintaining business relationships with existing and prospective customers, developing and managing all phases of the business development cycle, including managing proposal negotiations, statements-of-work, and completion of all contract details, as well as meeting an individual sales quota.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

50.    Figueroa resigned from Zeno on or around November 17, 2020, and immediately commenced employment with Impact Networking in the same month.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

51.    Walker resigned from Zeno on or around November 30 2020, and promptly commenced employment with Impact Networking in December 2020.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

52.    Plaintiff provided Randle, Roberts, Figueroa, and Walker with customer accounts, customer referrals, reassignments of former and current Zeno Imaging/TLC accounts, customer leads and account assignments, and new accounts generated by Plaintiff's goodwill, name recognition, reputation, promotions, and national and/or local marketing and advertising campaigns. Randle, Roberts, Figueroa, and Walker became intimately familiar with all aspects of the Zeno Imaging and/or TLC customer accounts they serviced and/or supervised, and each became a repository of information obtained, accumulated, and developed as the result of many customer sales calls, service calls, past transactions, sales proposals, and intelligence gathering and distillation. This repository of confidential customer information was continually processed, built up, refined, updated, and developed on behalf of the company. Thus, collectively, they have the power to inflict severe damage on Plaintiff's business where such information is exploited to the benefit of their new employer, and direct market competitor, Impact Networking.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

53.    In addition to the foregoing, Plaintiff provided Roberts, Figueroa, and Walker with secretarial and staff services; sales assistance; research; the benefit of Plaintiff's advertising, goodwill, and name recognition; the use of experts and highly trained technicians in computer analog and digital copier maintenance, networking, business systems, electronic imaging, hardware and software products; training in copier and printing systems, other office technology products, and services; and promotional, marketing, and sales support.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

54.    All of the customers serviced by Randle, Roberts, Figueroa, and Walker were generated by and through their employment with Plaintiff and are the direct and indirect result of

Plaintiff's investment of years of time, effort, and expense into the acquisition and development of the customers' accounts.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

55.    Furthermore, Plaintiff has taken substantial measures and exercised reasonable diligence to prevent its trade secrets and confidential information from becoming available to persons other than those selected by Plaintiff for the purpose of furthering its business. For example, Plaintiff requires any employee who is granted access to confidential and trade secret information to sign non-disclosure and non-compete agreements and/or other similar agreements which restrict the disclosure and use of such information. These agreements all contain provisions relating to confidential information and requiring the return of all company documents upon termination of the employment relationship. Plaintiff also requests its employees to review and sign various policies, including an Employee Handbook, which warns employees to avoid conflicts of interest caused by, among other things, misusing Zeno Imaging and/or TLC information. Plaintiff physically limits access to information by password-protecting their networks and grant their employees different levels of access to confidential information, depending on their position with the company. Information is strictly disclosed on a "need-to- know" basis. Furthermore, Plaintiff has a firewall system to prevent unauthorized access to its networks and provides login authentication. Plaintiff also randomly audits the use of e-mail and the Internet to monitor unauthorized use or access.

**ANSWER:**

Defendant denies the allegations in this paragraph.

(c)    **COPELAND AND VAUGHAN'S EMPLOYMENT AND CONTRACTUAL OBLIGATIONS TO ZENO**

56.    At the time of their hires, Copeland (in 2009) and Vaughan (in 2013) were asked to sign, and did sign, individual Non-Disclosure and Non-Compete Agreements with the acquired ZDS as a condition of their employment. (*See* **Exhibit A-4** and **Exhibit A-5**, respectively (hereinafter, the "Copeland and Vaughan Agreements").

**ANSWER:**

Defendant denies the allegations in this paragraph.

57.     Pursuant to the Copeland and Vaughan Agreements, Zeno agreed to disclose to Copeland and Vaughan during their employment certain confidential information belonging to Zeno, including but not limited to: customer and client lists, lists of prospective customers and client, manufacturer pricing for products, Zeno's practices in determining pricing for its clients or customers, customer and client preferences regarding equipment or services, Zeno's prior or planned bids to existing or prospective clients or customers, strategies regarding bids, Zeno's methods of handling and servicing client, Zeno's current and future marketing plans and strategies, Zeno's approach to and strategies for obtaining and maintain customers and clients, Zeno's hiring decisions and process by which such decisions are made by Zeno, Zeno's pay structure for employees, Zeno's plans for employee compensation and hiring, and other business information concerning Zeno.

**ANSWER:**

Defendant denies the allegations in this paragraph.

58.     After Copeland and Vaughan became employees, Zeno actually disclosed such information to Copeland and Vaughan, in direct reliance upon the covenants contained in their Agreements.

**ANSWER:**

Defendant denies the allegations in this paragraph.

59.     Among those covenants, Copeland and Vaughan agreed to keep all of Zeno's proprietary information confidential even after the termination of their employment. In Section II of the Copeland and Vaughan Agreements, Copeland and Vaughan agreed that:

Employee agrees not to use or disclose Confidential Information for any purpose or reason after Employee's employment with Employer ends. Also, during the course of Employee's employment, Employee agrees not to use or disclose Confidential Information for any purpose other than to advance Employer's business interests.

(**Exhibit A-4**, at ¶ II; **Exhibit A-5**, at ¶ II).

**ANSWER:**

Defendant denies the allegations in this paragraph.

60.     The terms of the aforementioned agreements provide that at the end of Copeland and Vaughan's employment, they were required to "return to or leave with Employer all Confidential Information which Employee has in Employee's direct or constructive possession." (*Id.* at ¶ IV).

**<u>ANSWER</u>:**

Defendant denies the allegations in this paragraph.

61.     Copeland and Vaughan also agreed to refrain from soliciting any current or potential customer of Zeno for two years following their employment. According to the non-solicitation provision of the Copeland and Vaughan Agreements, Copeland and Vaughan promised:

Employee agrees that for a period of two years after the end of Employee's employment with Employer, Employee will not seek to hire, directly or indirectly, any person who is or was employed by Employer during Employee's employment with Employer.

(*Id.* at ¶ V).

**<u>ANSWER</u>:**

Defendant denies the allegations in this paragraph.

62.     Copeland and Vaughan similarly agreed to refrain for two years after the end of their employment from:

. . . soliciting or contracting any person or entity who was (1) a customer or client of Employer during Employee's employment with Employer; (2) known by Employee to be a prospective customer or client of Employer during Employee's employment with Employer; or (3) known by Employee to be affiliated with a client or customer of Employer during Employee's employment with Employer.

(*Id.* at ¶ VI)

**<u>ANSWER</u>:**

Defendant denies the allegations in this paragraph.

63.   Further, Copeland and Vaughan agreed to certain restrictions on work activities following termination of their employment:

Employee agrees that for a period of two years after the end of Employee's employment with Employer, Employee will not, directly or indirectly, accept or perform any work to or for or on behalf of any customer or client for whom Employer provided services during the time employee worked for Employer if such work involves any of the following:

- Selling, servicing or repairing printers, multifunction printers, copiers, scanners or other office equipment of the type and/or variety sold, serviced or repaired by Employer

- Providing digital document workflow solutions

- Providing business advice that relates to copying, printing, faxing, scanning or archiving of documents

- Providing digital devices for the purpose (In whole or in part) of document management

- Printer fleet management

- Production printing

- Providing mailing solutions or other services relating to meeting client or customer mailing needs

- Selling, servicing or repairing document management software

- Selling, servicing or repairing equipment or information technology services

- Providing facilities management services or the type provided by Employer

- Selling or providing any other products or technologies that Employer also sold or provided during Employee's employment with Employer

(*Id.* at ¶ VII).

**ANSWER:**

Defendant denies the allegations in this paragraph.

64.     Notably, the Copeland and Vaughan Agreements limit the scope of any prohibited competition in a manner that is reasonably necessary to protect Zeno's legitimate business interests:

> Employee's non-competition restriction is limited to work that is both (1) performed for or on behalf of any customer or client for whom Employer provided services during the time Employee worked for Employer; and (2) within the geographical territory in which Employee actually worked while performing services for Employer.

(*See Id.*).

**ANSWER:**

Defendant denies the allegations in this paragraph

65.     During their employment, Copeland and Vaughan serviced Zeno clients and customers located throughout the State of Texas which, in turn, had locations within Texas and across the country. Moreover, and as a result of the 2018 acquisition by Plaintiff discussed herein, Copeland and Vaughan expanded their knowledge of Plaintiff's customer base as they were introduced to and reviewed marketing, customer information, pricing, and strategic direction materials for all of Plaintiff's operations.

**ANSWER:**

Defendant denies the allegations in this paragraph.

66.     In addition to the above agreements, Zeno requires employees to acknowledge and execute certain documents, including Zeno's Employee Handbook. (*See* **Exhibit B** (Handbook). The Employee Handbook warns against employee conflicts of interest, including but not limited to conflicts of interest caused by an employee misusing confidential information belonging to Zeno. (*See* **Exhibit B** at p. 22). The Employee Handbook also contains a provision stating that employees should have "no expectation of privacy" concerning information stored on Zeno computer equipment, and that such equipment was subject to search at any time. (*See Id.*).

**ANSWER:**

Defendant denies the allegations in this paragraph.

(d)    **RANDLE, ROBERTS, FIGUEROA, AND WALKER'S CONTRACTUAL OBLIGATIONS TO ZENO**

67.    As a condition of employment at the time of their respective hires, Figueroa (in 2019), and Walker (in 2019) agreed to sign, and did sign, individual Non-Disclosure and Non-Competition Agreements with Zeno (in the case of Figueroa under the Zeno Imaging brand and TLC in the case of Walker). Likewise, as a condition of continued employment following Plaintiff's acquisition of the assets of ZDS, Roberts (in 2018) agreed to sign, and did sign, the same Non-Disclosure and Non-Competition Agreement. (*See* **Exhibit A-1** (the "Roberts Agreement"), **Exhibit A-2** (the "Figueroa Agreement"), and **Exhibit A-3** (the "Walker Agreement"), respectively).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

68.    Defendant Randle, as a condition of her continued employment (in 2018), agreed to sign, and did sign a Non-Disclosure and Non-Solicitation Agreement with Zeno. (*See* **Exhibit A-6 (the "Randle Agreement")**. Nonetheless, Randle's obligations to Zeno are identical to those agreed to by Roberts, Figueroa, and Walker, with the exception of the non-competition component.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

69.    Pursuant to their agreements with Plaintiff, Plaintiff agreed to disclose to Randle, Roberts, Figueroa, and Walker certain confidential information belonging to Plaintiff, including but not limited to: customer and client lists, client prospect and prospective client material, price lists, rate structures, client service and preference records, Zeno appointment books, payroll information, sales and profit data, marketing strategies and information, prior and planned bids, strategies associated with decisions and the process by which such decisions are made, company management and pay structure, chemical information and formulas and any other information of a technical, financial or business nature now or hereafter existing or developed that is unique to Zeno and/or provides Zeno with a competitive advantage in the marketplace. (*See Id.* at ¶ 7).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

70.     During the course of their employment with Plaintiff, Plaintiff actually disclosed such information to Randle, Rogers, Figueroa, and Walker, in direct reliance upon the covenants contained in each of their agreements.

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the

allegations in this paragraph are denied.

71.     Among those covenants, Rogers, Figueroa, and Walker agreed to keep all of Zeno's proprietary information confidential even after the termination of their employment with Zeno Imaging or TLC (Walker). In Paragraph 7, Rogers, Figueroa, and Walker each agreed that:

> At all times, both during and after the termination of employment, the Employee shall keep and retain in confidence and shall not disclose, except as required in the course of the employee's employment with Zeno/TLC, to any person, or as may be required by law, firm or corporation, or use for the Employee's own purposes, any Confidential Information.

> (*See Id.*).

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the

allegations in this paragraph are denied.

72.     The terms further provide that at the end of their employment, each former employee is required to "return all Zeno documents in Employee's possession, custody, or control." (*See Id.* at ¶ 6).

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the

allegations in this paragraph are denied.

73.     Rogers, Figueroa, and Walker also agreed that:

. . . during the term of his/her employment, and for a period of two years after termination of employment from Zeno/TLC (whether voluntary or involuntary), Employee will not, directly or indirectly:

(a)     Become associated or affiliated with, employed by, or financially interested in, any business or entity which engages (or is preparing to engage) in competition with Zeno/TLC's business, including, but not limited to, participating in or having any involvement with or responsibility for offering, leasing, selling, marketing, providing or otherwise promoting any of the same products or services among those included in Zeno/TLC's Business for which Employee had any direct or indirect management, product line, customer or sales territory responsibility or role, either as principal, agent, manager, supervisor, employee, partner, director, officer, consultant or shareholder . . . ;

(b)     Engage in any activity, or make any effort, including in any role as consultant or advisor, to solicit, encourage, conduct business with, accept business from, or induce any customer or prospective customer of Zeno/TLC to obtain business and/or services from any entity (other than Zeno/TLC) engaged in any activity competitive with Zeno/TLC's Business; and

(c)     Cause or attempt to cause, or engage in any activity having the tendency or effect of causing, any customer or vendor of Zeno/TLC to modify, reduce, divert, diminish or curtail its business with Zeno/TLC.

(*See Id.* at ¶ 8).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.


74.     Randle, Rogers, Figueroa, and Walker further agreed to refrain for two years after the end of their employment with Plaintiff from:

. . . directly or indirectly, soliciting, enticing, or encouraging any employee of Zeno/TLC to leave Zeno/TLC and Employee further agrees not to hire or employ (or cause and/or assist), whether directly or indirectly, any third party to hire or employ) any such employee.

(*See Id.* at ¶ 10).

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the allegations in this paragraph are denied.

75.     Each agreement limits the scope of the employees' prohibited competition in a manner that is reasonable and necessary to protect Plaintiff's legitimate business interests:

. . . In recognition of the geographic scope of Zeno/TLC's Business, the restrictions on competition . . . are intended to cover the following geographic areas and/or account coverage, whether regional or national in scope:

Any business line, area and/or account assigned by Zeno/TLC to Employee, or under Employee's management, control and/or responsibility, or concerning which Employee provided any direct or indirect collaboration or assistance during the two (2) year period immediately preceding the termination of Employee's employment.

(*See Id.* at ¶ 9).

**ANSWER**:

This paragraph is directed to another party.   To the extent an answer is required, the allegations in this paragraph are denied.

76.     During their employment with Plaintiff, Rogers and Figueroa serviced Zeno Imaging related clients and customers while Walker serviced TLC related clients and customers, all located throughout the State of Texas.

**ANSWER**:

This paragraph is directed to another party.   To the extent an answer is required, the allegations in this paragraph are denied.

77.     In addition to the agreements discussed above, Randle, Rogers, and Figueroa are subject to the same provisions of Zeno's Employee Handbook regarding "no expectation of privacy," as discussed in Paragraph 66 above. (*See* **Exhibit B** at p. 22).

**ANSWER**:

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

### (e)   THE INDIVIDUAL DEFENDANTS' NEARLY EN MASSE DEPARTURES FROM ZENO AND EMPLOYMENT WITH IMPACT NETWORKING

78.   In November 2020, Defendants Copeland and Vaughan, upon information and belief with the express or tacit approval of Impact Networking, began the wholesale solicitation and recruitment of key personnel at Zeno to join Impact Networking to grow its competing business.

**ANSWER:**

Defendant denies the allegations in this paragraph.

79.   At least four other now former Zeno employees—Defendants Randle, Roberts, Figueroa, and Walker—resigned to join Impact Networking in November 2020. Several other Zeno employees have been recruited and continue to be recruited by one or more of the Defendants.

**ANSWER:**

Defendant denies the allegations in this paragraph.

80.   Plaintiff's investigation surrounding the Individual Defendants' nearly *en masse* departures from Zeno to join Impact Networking is just beginning. However, Plaintiff has already discovered information causing grave concern about Defendants' activities and intentions.

**ANSWER:**

Defendant denies the allegations in this paragraph.

81.   For example, Plaintiff has discovered that Defendant Copeland forwarded an email containing Zeno bid information—titled ***Statement of Work for Printer Fleet Management Service***—to his personal email address. (*See* **Exhibit C**). On information and belief, Copeland, along with other Individual Defendants, have forwarded numerous documents constituting Plaintiff's confidential, proprietary, and trade secret information to their personal accounts prior to their departure to aide in the solicitation of Plaintiff's customer accounts.

**ANSWER:**

Defendant denies the allegations in this paragraph.

82.    Further, Plaintiff has discovered that Defendant Figueroa wiped his company laptop, including email communications, prior to returning it at the end of his employment.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

83.    Defendant Roberts likewise failed to return highly sensitive, confidential information belonging to Plaintiff, including but not limited to company file folders and documents, following the end of her employment and is suspected to still be in possession of other confidential information, which is being used and disclosed by Roberts and/or the Individual Defendants, collectively, for the benefit of Impact Networking. Further, on inventory of Roberts' company laptop and phone devices, Defendant Roberts refused to allow Plaintiff to see her phone, which she used throughout the course of her employment with Zeno to send/receive and store highly sensitive and proprietary company information. Thus, on information and belief, Roberts continues to possess highly confidential and proprietary company information belonging to Plaintiff on one or more of her personal electronic devices.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

84.    In addition, Defendants Randle and Walker, upon information and belief, likewise remain in possession of Zeno's confidential and proprietary business information, as they used personal phone devices, not company phone devices, to transmit and conduct business throughout their employment and have failed to remit such information in accordance with their promise to return such information following the end of their employment with Plaintiff.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

(f)    **DEFENDANTS' ADMISSIONS, LIES AND UNREASONABLE "CONDITIONAL" ASSURANCES REGARDING THEIR ACTIVITIES**

85.    Upon learning of the Individual Defendants' and Defendant Impact Networking's surreptitious and unlawful activities, on December 1, 2020, Plaintiff sent Defendants Randle, Rogers, Figueroa, Walker, letters demanding that they cease and desist their unlawful activities, and "come clean" regarding what they had done to that point. Defendant Impact Networking was copied on these correspondences. (*See* **Exhibit D-1** ("Randle Letter"), **Exhibit D-2** ("Roberts Letter"), **Exhibit D-3** ("Figueroa Letter"), **Exhibit D-4** ("Walker Letter")).

**ANSWER:**

Defendant denies the allegations in this paragraph.

86.    On December 4, 2020, counsel for Defendants Roberts, Figueroa, and Impact Networking provided a collective response on their behalf, in which counsel addressed the matters set forth in the December 1, 2020 letters from Plaintiff's counsel. (*See* **Exhibit D-5** ("Defendants' Dec. 4 Response Letter")).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

87.    Defendants' Dec. 4 Response Letter noted that Defendant Roberts "has certain files and other information she needs to return," constituting an admission that Defendant Roberts was, and upon information and belief remains, in possession of Plaintiff's confidential information.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

88.    Defendants' Dec. 4 Response Letter further stated that Randle, Rogers, Figueroa, and Walker (1) "will honor the provisions in their agreements relating to the non-solicitation of Visual Edge employees"; and (2) will honor the provisions in their agreements relating to the non-solicitation of Visual Edge customers that they serviced", but only if Plaintiff agrees to pay these four Defendants certain amounts to which they are not entitled and are wholly unrelated to the Individua l Defendants' respective agreements with Plaintiff. (*See* **Exhibit D-5**).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

89.    On December 3, 2020, Plaintiff's counsel similarly sent letters to Defendants Copeland and Vaughan demanding they cease and desist their unlawful activities, and admit their unlawful conduct to date. Defendant Impact Networking was also copied on these correspondences. (*See* **Exhibit D-6** ("Vaughan Letter"), **Exhibit D-7** ("Copeland Letter"). Plaintiff's gave Copeland and Vaughan until December 4, 2020 to respond. *Id.*

**ANSWER:**

Defendant denies the allegations in this paragraph and the documents speak for themselves.

90.    On December 8, 2020, Defendants Copeland and Vaughan, through counsel, responded. (*See* **Exhibit D-8** ("Defendants' Dec. 8 Response Letter").

**ANSWER:**

Defendant admits the allegations in this paragraph.

91.    In Defendants' Dec. 8 Response Letter, Defendants Copeland and Vaughan denied that they owed any post-employment obligations to Zeno. *Id.*

**ANSWER:**

Defendant denies the allegations in this paragraph and the documents speak for themselves.


**(g)    THE IRREPARABLE HARM DEFENDANTS ARE INFLICTING UPON ZENO**

92.    In direct violation of one or more of Defendants' obligations, Plaintiff believes and therefore avers, upon information and belief, that Defendants are competing and/or preparing to compete with Plaintiff in the same territories with respect to the same actual and potential customers to which the Individual Defendants' were assigned while at Zeno or TLC; that, upon information and belief, the Individual Defendants, particularly Defendants Copeland and Vaughan, have already solicited Plaintiff's customers; that Defendants are planning on further soliciting and diverting Plaintiff's customers; and that Defendants have retained, confiscated and/or used Plaintiff's confidential and proprietary information, and/or that Defendants will inevitably use such information in their competitive activities, especially including information pertaining to actual and prospective Zeno/TLC customers and the business and communications conducted by Plaintiff with said customers

**ANSWER:**

Defendant denies the allegations in this paragraph.

93.     Upon information and belief, Defendants each plan to use, rely upon, disclose, or draw upon Plaintiff's customer records or information without authorization and have or will otherwise misappropriate valuable Zeno/TLC customer records or information, either affirmatively and/or inevitably as a result of the Individual Defendants' past access, knowledge, and activities in supervising, servicing, and communicating with Plaintiff's actual and prospective customers.

**ANSWER:**

Defendant denies the allegations in this paragraph.

94.     Defendants' use and/or conversion of the information utilized by Plaintiff to conduct its business and to maintain an advantage over its competitors, including, but not limited to, the names, addresses, account information, price and purchase information, and strategies concerning Plaintiff's customer base, and Defendants' solicitation of Plaintiff's customers whose accounts the Individual Defendants' formerly serviced, supervised, learned of, and/or had contact with while employed with Plaintiff, and/or Plaintiff's accounts for whom the Individual Defendants were otherwise responsible, will inevitably cause Plaintiff great and irreparable harm, injury, loss of office stability, standing, and incalculable future revenues.

**ANSWER:**

Defendant denies the allegations in this paragraph.

95.     Plaintiff alleges, upon information and belief, that Defendants have engaged in, are preparing to engage in, and/or are continuing to engage in, inter alia, the following acts:

(a)     converting the information contained in confidential Zeno/TLC business records, specifically including the names, addresses, telephone numbers, business dealings, purchasing requirements, pricing policies and information, sales proposals, volume and discounting variables, customer contract terms, packaging arrangements, timing considerations, training techniques and strategies, and other confidential financial information concerning the customers the Individual Defendants' serviced, profiled, supervised, and/or learned during their employment with Plaintiff;

(b)     transmitting verbally, in writing, or otherwise, to or on behalf of themselves and/or their new employer, customers' names, addresses, account related information, and other information contained in the records of Zeno/TLC and described herein above;

(c)      soliciting and/or preparing to solicit Plaintiff's customers to terminate their relationship with Plaintiff and conduct business with and/or through Impact Networking;

(d)      soliciting and encouraging Plaintiff's employees to leave their employment with Plaintiff and/or to join Defendants in their capacities as employees and/or representatives of Impact Networking, Plaintiff's direct competitor; and

(e)      other such acts contrary to the terms, conditions, and provisions of the employment and post-employment obligations owed to Plaintiff by the Individual Defendants (*see generally* **Exhibit A** attached hereto), and Plaintiff's trade secret, property, proprietary and other rights.

**ANSWER:**

Defendant denies the allegations in this paragraph.

96.      By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a preliminary injunction against Defendants.

**ANSWER:**

Defendant denies the allegations in this paragraph.

97.      Unless Defendants are preliminarily enjoined from the foregoing conduct, Plaintiff will be irreparably harmed by:

(a)      Disclosure of trade secrets, customer lists, business methods and strategies, and other confidential information that are solely the property of Plaintiff and its clients;

(b)      Loss of confidentiality of the information contained in customers' records, loss of confidentiality of customers' business and financial dealings, loss of confidence and trust of customers, loss of customers' goodwill, and loss of business reputation; and

(c)      Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

98.      Plaintiff has no adequate remedy at law.

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.  To the extent an answer is required, this allegation is denied.

99.     The balancing of the harms and the public interest also strongly militate in favor of injunctive relief.

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.  To the extent an answer is required, this allegation is denied.

## COUNT I

## BREACH OF CONTRACT AGAINST INDIVIDUAL DEFENDANTS' COPELAND AND VAUGHAN

100.     The allegations of Paragraphs 1 through 99 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

101.     The Copeland and Vaughan Agreements are valid and enforceable contracts, and Plaintiff has succeeded to the rights with respect to the agreements.

**ANSWER:**

Defendant denies the allegations in this paragraph.

102.     Zeno performed or tendered performance under the Copeland and Vaughan Agreements by employing Copeland and Vaughan and providing them with confidential and proprietary business information, including information regarding products, methodology, confidential pricing and sales information, trade secrets, business practices, marketing plans, customer lists and contact information, and other sensitive business information, and by satisfying all other conditions precedent to enforcement of the agreements.

**ANSWER:**

Defendant denies the allegations in this paragraph.

103.    Defendants Copeland and Vaughan have breached their obligations under the Copeland and Vaughan Agreements, including but not limited to by providing Confidential Information (as that term is defined in the Agreements) to Impact Networking; by soliciting and recruiting Plaintiff's employees to Impact Networking, and/or aiding Impact Networking in seeking to hire Plaintiff's employees; by soliciting and contacting Plaintiff's existing and/or prospective customers and clients; and/or by otherwise violating their obligations under the agreements. (*See* **Exhibit A-4** and **Exhibit A-5** at ¶ II).

**ANSWER:**

Defendant denies the allegations in this paragraph.

104.    As a direct result of Copeland's and Vaughan's breaches of contract, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

**COUNT II**

**BREACH OF CONTRACT AGAINST INDIVIDUAL DEFENDANTS ROBERTS, FIGUEROA, AND WALKER**

105.    The allegations of Paragraphs 1 through 104 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

106.    The Roberts Agreement, Figueroa Agreement, and the Walker Agreement are valid and enforceable contracts.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

107.     Plaintiff performed or tendered performance under the aforementioned agreements by employing Roberts, Figueroa, and Walker, and providing them with confidential and proprietary business information, including information regarding products, methodology, confidential pricing and sales information, trade secrets, business practices, marketing plans, customer lists and contact information, and other sensitive business information, and Plaintiff has otherwise satisfied all conditions precedent to enforcement of the agreements.

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the allegations in this paragraph are denied.

108.     Roberts, Figueroa, and Walker have breached their respective agreements by retaining or misappropriating for their own benefit Confidential Information (as that term is defined in the Agreement) and trade secrets belonging to Plaintiff; soliciting and contacting Plaintiff's existing and prospective customers and clients; and/or otherwise breaching the terms of the agreements. (*See* **Exhibit A-1**, **Exhibit A-2**, and **Exhibit A-3**).

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the allegations in this paragraph are denied.

109.     As a direct result of Roberts', Figueroa, and Walker's breaches of contract, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

This paragraph is directed to another party.   To the extent an answer is required, the allegations in this paragraph are denied.

## COUNT III

## BREACH OF CONTRACT AGAINST INDIVIDUAL DEFENDANT RANDLE

110.     The allegations of Paragraphs 1 through 110 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

111.    The Randle Agreement is a valid and enforceable contract.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph and thereby denies them.

112.    Plaintiff performed or tendered performance under the Randle Agreement by employing Randle and providing her with confidential and proprietary business information, including information regarding products, methodology, confidential pricing and sales information, trade secrets, business practices, marketing plans, customer lists and contact information, and other sensitive business information, and Plaintiff has otherwise satisfied all conditions precedent to enforcement of the Randle Agreement.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph and thereby denies them.

113.    Randle has breached Section 7 of the Randle Agreement by, among other things, retaining or misappropriating for his own benefit Confidential Information (as that term is defined in the agreement) and trade secrets belonging to Plaintiff; soliciting and seeking to hire and/or aiding Impact Networking in the hiring of Plaintiff's employees; and/or otherwise violating her obligations under the agreement. (*See* **Exhibit A-6**).

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph and thereby denies them.

114.    As a direct result of Randle's breach, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

## COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS
### (Texas Civil Practice and Remedies Code, § 134A.001, et seq.)

115.    The allegations of Paragraphs 1 through 115 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding paragraphs as if fully set forth herein.

116.    The books, records, and computerized databases of Plaintiff, the confidential information contained therein, including the identity of Plaintiff's customers, their names and addresses, agents and account managers, business and financial dealings, the transactions in their Zeno Imaging and/or TLC accounts, purchase requirements, purchasing history and patterns, servicing terms and conditions, Plaintiff's strengths and weaknesses with its customers, and other business and financial information concerning Plaintiff's products, prices, profitability considerations, marketing strategies, leasing terms, vendors, costs, training techniques, distribution and delivery systems, and/or other market considerations, are trade secrets subject to protection under the Texas Uniform Trade Secrets Act, Texas Civil Practice and Remedies Code, § 134A.001, et seq.

**ANSWER:**

Defendant denies the allegations in this paragraph.

117.    The books, records, and computerized databases of Plaintiff, and the confidential information contained therein, is a compilation of information that derives independent economic value by not being accessible, through proper means, to third parties or competitors such as the Individual Defendants and/or Defendant Impact Networking, who can profit from the explicit and/or implicit and/or intentional and/or inevitable use or disclosure of the information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

118.    Plaintiff has taken reasonable measures under the circumstances to maintain the secrecy of this information by, among other things, limiting its dissemination; expressly advising its employees that such information is confidential and not to be disclosed for any purpose other than authorized business; by requiring employees to acknowledge the confidentiality of such

information in Plaintiff's Employee Handbook; and by requiring employees like the Individual Defendants to sign agreements by which they promise not to use or disclose such information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

119.    Upon information and belief, Defendants unlawfully misappropriated trade secrets belonging to Plaintiff by unlawfully retaining, disclosing, and/or using certain trade secrets to unlawfully compete with Plaintiff. Defendants' foregoing conduct constitutes an actual, planned, and/or inevitable misappropriation and misuse of Plaintiff's confidential, trade secret information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

120.    Defendants knew and know that the confidential information disclosed and/or utilized/anticipated to be used by them constitutes trade secrets belonging to Plaintiff and that they are not authorized to possess or use those secrets for any purpose other than authorized business for Plaintiff's benefit.

**ANSWER:**

Defendant denies the allegations in this paragraph.

121.    Impact Networking was aware that the Individual Defendants' had a confidential relationship with Plaintiff and that they are in possession of Plaintiff's confidential and trade secret information that has been wrongfully disclosed.

**ANSWER:**

Defendant denies the allegations in this paragraph.

122.    As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## COUNT V

## MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS
### (Defend Trade Secret Act, 18 U.S.C. § 1832, et seq.)

123.    The allegations of Paragraphs 1 through 122 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

124.    The books, records, and computerized databases of Plaintiff, the confidential information contained therein, including the identity of Plaintiff's customers, their names and addresses, agents and account managers, business and financial dealings, the transactions in their Zeno Imaging and/or TLC accounts, purchase requirements, purchasing history and patterns, servicing terms and conditions, Plaintiff's strengths and weaknesses with its customers, and other business and financial information concerning Plaintiff's products, prices, profitability considerations, marketing strategies, leasing terms, vendors, costs, training techniques, distribution and delivery systems, and/or other market considerations, are trade secrets subject to protection under the Defend Trade Secret Act, 18 U.S.C § 1832, et seq.

**ANSWER:**

Defendant denies the allegations in this paragraph.

125.    The books, records, and computerized databases of Plaintiff, and the confidential information contained therein, is a compilation of information that derives independent economic value by not being accessible, through proper means, to third parties or competitors such as the Individual Defendants and/or Defendant Impact Networking, who can profit from the explicit and/or implicit and/or intentional and/or inevitable use or disclosure of the information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

126.    Plaintiff's trade secrets are related to a product or service used in or intended for use in interstate commerce. Plaintiff's business is national and extends beyond Texas; it includes customers with operations in numerous states.

**ANSWER:**

Defendant denies the allegations in this paragraph.

127.    Plaintiff has taken reasonable measures under the circumstances to maintain the secrecy of this information by, among other things, limiting its dissemination; expressly advising its employees that such information is confidential and not to be disclosed for any purpose other than authorized business; by requiring employees to acknowledge the confidentiality of such information in Plaintiff's Employee Handbook; and by requiring employees like the Individual Defendants to sign agreements by which they promise they will not use or disclose such information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

128.    Upon information and belief, Defendants unlawfully misappropriated trade secrets belonging to Plaintiff by unlawfully retaining, disclosing, and/or using certain trade secrets to unlawfully compete with Plaintiff. The Defendants' foregoing conduct constitutes an actual, planned, and/or inevitable misappropriation and misuse of Plaintiff's confidential, trade secret information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

129.    Defendants knew and know that the confidential information disclosed and/or utilized/anticipated to be used by them constitutes trade secrets belonging to Plaintiff and that they are not authorized to possess or use those secrets for any purpose other than authorized business for Plaintiff's benefit.

**ANSWER:**

Defendant denies the allegations in this paragraph.

130.    Impact Networking was aware that the Individual Defendants had a confidential relationship with Plaintiff and that they are in possession of Plaintiff's confidential and trade secret information that has been wrongfully disclosed.

**ANSWER:**

Defendant denies the allegations in this paragraph.

131.    As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## COUNT VI

### BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY AGAINST INDIVIDUAL DEFENDANTS COPELAND AND VAUGHAN

132.    The allegations of Paragraphs 1 through 132 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

133.    Defendants Copeland and Vaughan were trusted executives in a confidential relationship with Zeno, and thus owed fiduciary duties to Zeno. Copeland and Vaughan violated their common law duty of loyalty and fiduciary duty arising under their employment relationship with Zeno in that, while employed by Zeno, upon information and belief Copeland and Vaughan schemed to recruit others to leave Plaintiff's employment and join them in their competitive employment, and/or schemed with others, to affirmatively or inevitably use and/or disclose to and/or on behalf of Plaintiff's competitor the confidential information contained in Plaintiff's customer and business records, to misappropriate Plaintiff's trade secrets and confidential business information, and to otherwise act in a manner harmful to the employer whose best interests Copeland and Vaughan were under a duty to promote.

**ANSWER:**

Defendant denies the allegations in this paragraph.

134.    As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and have suffered and/or will suffer damages that are presently incalculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## COUNT VII

## INTERFERENCE WITH ACTUAL AND PROSPECTIVE BUSINESS RELATIONS AGAINST ALL DEFENDANTS

135.    The allegations of Paragraphs 1 through 135 incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

136.    Upon information and belief, Defendants have willfully and intentionally interfered with Plaintiff's actual business relationships and/or those business relationships for which Plaintiff had a reasonable probability of entering into a contractual relationship, without justification, and by the utilization of independently tortious or unlawful acts, including, *inter alia*, by using or planning to use confidential information, affirmatively or inevitably, concerning the identity and purchasing needs and/or histories of Plaintiff's customers, by using or planning to use the confidential prices and service agreement terms Plaintiff employed with its customers, by recruiting and attempting to recruit Plaintiff's employees to work for Impact Networking in the same area as Plaintiff's offices for an improper purpose, by representing Impact Networking in sales efforts in violation of non-competition and/or non-solicitation and non-disclosure agreements, and by otherwise using, affirmatively or inevitably, the confidential information concerning Plaintiff's customers to obtain an improper competitive advantage. The foregoing unlawful and intentional acts by Defendants were calculated to cause damage to Plaintiff in its lawful business and done with a conscious desire to prevent Plaintiff from forming new customer and client relationships, and have resulted in actual and anticipated damage or loss to Plaintiff which Defendants knew or were substantially certain would occur.

**ANSWER:**

Defendant denies the allegations in this paragraph.

137.    As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and have suffered and/or will suffer damages in an amount that is presently incalculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

<u>**COUNT VIII**</u>

<u>**INTERFERENCE WITH CONTRACTUAL RELATIONS**</u>
<u>**AGAINST INDIVIDUAL DEFENDANTS COPELAND AND VAUGHAN,**</u>
<u>**AND DEFENDANT IMPACT NETWORKING**</u>

138.   The allegations of Paragraphs 1 through 138 are incorporated herein by reference with the same force and effect as if set forth in full below.

<u>**ANSWER:**</u>

Defendant restates the preceding answers as if fully set forth herein.

139.   Individual Defendants Copeland, Vaughan, and Defendant Impact Networking, have intentionally sought to interfere with the performance of the contractual obligations owed to Plaintiff by Plaintiff's former employees, including, but not limited to, Individual Defendants Randle, Rogers, Figueroa, and Walker (the "Former Employees"). With knowledge of their respective agreements, Impact Networking tortiously interfered with the former employees' agreements with Plaintiff by knowingly and intentionally soliciting the Former Employees to work for Impact Networking in positions that require them and/or will inevitably lead them to violate their agreements, inducing them to break their employment with Plaintiff and breach their agreements to Plaintiff's detriment and damage, to the benefit of Impact Networking and/or with the intent to injure Plaintiff.

<u>**ANSWER:**</u>

Defendant denies the allegations in this paragraph.

140.   Defendants' actions have been and are being taken deliberately and without privilege or justification.

<u>**ANSWER:**</u>

Defendant denies the allegations in this paragraph.

141.   As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and have suffered and/or will suffer damages in an amount that is presently incalculable.

<u>**ANSWER:**</u>

Defendant denies the allegations in this paragraph.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Defendant seeks judgment in his favor and against Plaintiff and such

further relief as deemed just and appropriate.

## **AFFIRMATIVE DEFENSES**

Defendant by and through his attorneys, Howard & Howard Attorneys PLLC, submits the following as his affirmative defenses:

1.      Plaintiff's trade secret claims fail because Plaintiff possessed no trade secret information subject to protection.

2.      Plaintiff's trade secret claims fail because to the extent Plaintiff possessed any trade secret, Plaintiff did not take reasonable measures to protect such information.

3.      Plaintiff's DTSA claim fails for lack of any nexus to interstate commerce.

4.      Plaintiff's fiduciary duty claims fail because the information allegedly shared was not confidential.

5.      Plaintiff's fiduciary duty claims fail because the alleged breach did not result in an injury to Plaintiff or a benefit to Defendants.

6.      Plaintiff's contractual claims fail because any underlying contract lacked consideration and is invalid.

7.      Plaintiff's contractual claims fail because Plaintiff and Defendant had no enforceable contract, any non-compete or non-solicitation agreement Defendant may have been subject to was not assignable, and any such agreement has expired by its own terms.

8.      In the alternative, Plaintiff's first in time material breach of any contract, by among other things, failing to perform, pay compensation, and other actions/inactions renders the contract unenforceable.

9.      Plaintiff's claims fail as contrary to public policy.

10.     Plaintiff's claims fail because the agreement on which it sues is invalid and void.

11.    Plaintiff has failed to identify any business relationship interfered with by Defendant.

12.    Plaintiff cannot establish malice or intentional conduct on the part of Defendant in order to support its claims.

13.    Plaintiffs' claims are barred, in whole or in part, by Plaintiff's own unclean hands, illegal acts, equal responsibility, and/or the doctrine of in pari delicto.

14.    Plaintiff is required to pay Defendants attorneys' fees and costs in defending against their baseless action.

15.    Defendant reserves the right to amend his answer and assert further defenses as may be necessary and further discovery warrants.

## JURY DEMAND

Defendant hereby demands a jury trial on all issues so triable.

Dated: February 12, 2021

By: _/s/ David C. Van Dyke_
David C. Van Dyke
**ATTORNEY-IN-CHARGE**
**_(admitted pro hac vice)_**
Illinois State Bar No. 6204705
California State Bar No. 294892
_dvd@h2law.com_
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
312-456-3641 / 312-939-5617 _fax_

and

Stephen P. Dunn
Texas State Bar No. 24121436
Michigan State Bar No. P687
_spd@h2law.com_
HOWARD & HOWARD ATTORNEYS PLLC
450 W. Fourth Street
Royal Oak, Michigan 48067

248-723-0424 / 248-645-1568 *fax*

and

Edwin Buffmire
State Bar No. 24078283
Federal ID 2312143
*ebuffmire@jw.com*
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
214-953-6000 / 214-953-5822 *fax*

and

Colton Tobias
State Bar No. 24115863
Federal ID 24115863
*ctobias@jw.com*
JACKSON WALKER LLP
1400 McKinney Street, Ste. 1900
Houston, Texas 77010
713-752-4200 / 713-752-4221 *fax*

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of February 2021, I true and correct copy of the foregoing document was served upon all counsel entitled to receive such notice via the Court's electronic filing system.

<u>            */s/David C. Van Dyke*            </u>