## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

VISUAL EDGE, INC. d/b/a ZENO
IMAGING AND TLC OFFICE SYSTEMS,

        Plaintiff,

    v.

CASEY VAUGHAN, SCOTT COPELAND,
RENEE RANDLE, DIANE ROBERTS,
ALFREDO FIGUEROA, BRIAN WALKER,
IMPACT NETWORKING TEXAS, LLC,
IMPACT NETWORKING, LLC, and
INNOVATIVE ORANGE, collectively,

        Defendants.

        No. 4:20-cv-04220

CASEY VAUGHAN, SCOTT COPELAND,
and IMPACT NETWORKING TEXAS,
LLC,

        Counter-Plaintiffs,

    v.

VISUAL EDGE, INC., d/b/a ZENO
IMAGING AND TLC OFFICE SYSTEMS,

        Counter-Defendant.

## DEFENDANT RENEE RANDLE'S
## ANSWER TO PLAINTIFF'S FIRST AMENDED
## COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Renee Randle ("Defendant" or "Randle"), by and through her attorneys,

Howard & Howard Attorneys PLLC, answers Plaintiff Visual Edge, Inc. ("Visual Edge") d/b/a

Zeno Imaging ("Zeno Imaging") and TLC Office Systems' ("TLC") (collectively, "Plaintiff" or

"Zeno") Complaint as follows.  Any allegation not expressly admitted is denied.

## A.     **NATURE OF ACTION**

1.     This action is based on, among other harmful acts of misconduct, the Individual Defendants' multiple breaches of their respective Non-Disclosure and/or Non-Compete Agreements signed with Plaintiff (the "Agreements"); Impact Texas' and Impact Networking's knowing and intentional interference with the Agreements; Copeland and Vaughan's knowing and intentional interference with Zeno's business relations; Copeland and Vaughan's knowing and intentional violation of their fiduciary duties owed to Zeno; Innovative Orange's knowing receipt of monies paid by Plaintiff as a result of Copeland and Vaughan's fraud and breach of their fiduciary duties; and the misappropriation and/or threatened misappropriation of Zeno's confidential, proprietary, and highly sensitive trade secret and other business information by all Defendants.

**ANSWER:**

    Defendant denies the allegations in this paragraph.

2.     This action seeks not only to halt but damages for Defendants' collective scheme and concerted effort, spear-headed by Copeland and Vaughan, to raid Plaintiff of top talent and usurp its corporate opportunities in the form of customer relationships and employees by leveraging Zeno's confidential, proprietary, and trade secret information--learned <u>during the course of the Individual Defendants' former employment</u>--to benefit industry competitors Impact Networking and Impact Texas.

**ANSWER:**

    Defendant denies the allegations in this paragraph.

3.     Plaintiff, through the use of trade names such as Zeno Imaging and TLC in various Texas markets, is engaged in the business of, among other things, selling, leasing and servicing office equipment and systems and provides full-service IT management, including remote monitoring and administration of networks, service desk, and data backup, to support managed IT and print services, IT hardware and software, and communication and data needs.

**ANSWER:**

    Defendant denies the allegations in this paragraph.

4.     Copeland was a key member of Zeno's executive leadership team and sales force, serving as Vice President and Vice President of Professional Services at Zeno until becoming President and Partner of Defendant Impact Texas in November 2020. Vaughan was also a key member of Zeno's executive leadership team and sales force, serving as Vice President of Marketing, Central Texas Branch Manager, Director of Sales, and eventually Vice President of Sales until he recently became Chief Operating Officer and Partner at Impact Texas in November 2020.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

5. Likewise, Defendant Roberts, a former Enterprise Account Executive, Defendant Figueroa, a former Managed IT Solutions Sales Specialist, Defendant Randle, a former Sales Operations, Process and Funding Manager/Sales and Billing Coordinator/Sales Analyst, and Defendant Walker, a former TLC Managed IT Solutions Sales Specialist, were central members of Zeno's Managed IT Solutions team and general sales force, all of whom resigned in concert *after* Copeland and Vaughan left Zeno to immediately begin employment with Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

6. Figueroa joined Defendant Impact Texas as a Senior Account Manager in November 2020, Roberts joined as a Senior Account Manager in December 2020, Randle joined as Office Coordinator in December 2020, and Walker joined as Senior Account Manager in December 2020.

**ANSWER:**

Defendant admits only those allegations directed to the answering Defendant and denies all others.

7. Unbeknownst to Plaintiff and beginning as early as July 2020, Copeland and Vaughan, along with Impact Networking's President, Chief Financial Officer, Chief Marketing Officer, and Vice President of Talent Acquisition, among others, led a raid on Zeno's Texas based employees-soliciting and recruiting Copeland and Vaughan's former colleagues and key Zeno employees for employment at Impact Networking's to-be established Texas branch--Impact Texas. Furthermore, this raid was perpetrated through Defendants' misappropriation of Zeno's confidential and trade secret information for their own benefit and the benefit of Defendants Innovative Orange, Impact Networking, and Impact Texas. In fact, Defendants did not just steal Zeno's trade secret and/or confidential materials: Zeno's proprietary materials were used as the basis for Impact Networking's go-to-market strategy for Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

8. These acts constitute multiple, direct violations of the Individual Defendants' respective Non-Disclosure and Non-Competition Agreements with Zeno, and have to date resulted

in material and compensable losses to Zeno's customer relationships, competitive position, good will, and bottom line. If not ultimately enjoined, these unlawful acts will continue to decimate Zeno's business, particularly in the current COVID-19 pandemic environment that continues to present its own set of challenges to Zeno and its industry counter-parts.

**ANSWER:**

Defendant denies the allegations in this paragraph.

9.     In addition to their violative acts of deliberately poaching Zeno's employees, Copeland and Vaughan, upon information and belief, remain in possession of confidential and trade secret information belonging to Zeno. Indeed, neither Copeland nor Vaughan possessed a company laptop or phone during the course of their employment, but rather conducted all Zeno-related business on their personal devices. Defendant Copeland, in particular, maintained, among other things, approximately 90,000 Zeno emails and other electronically stored Zeno information on a separate hard drive, all of which have not been produced in this litigation to date. Copeland and Vaughan's maintenance and use of such confidential and trade secret information on their personal devices, and subsequent sharing of such information for the benefit of Defendants Innovative Orange, Impact Networking, and Impact Texas, constitutes a violation of their Agreements and post-employment obligations to Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

10.     Defendants Roberts, Figueroa, and Walker also each agreed in their respective Non-Disclosure and Non-Competition Agreements with Plaintiff (Zeno Imaging in the case of Roberts and Figueroa and TLC in the case of Walker) to certain reasonable post-employment covenants obligating them not to engage in certain actions on behalf of competitors like Impact Networking and Impact Texas. Nonetheless, Roberts admittedly misappropriated confidential and trade secret information belonging to Zeno and failed to return company materials and files upon termination of her employment, which also constitutes a violation of her Agreement with Zeno. Similarly, Figueroa, upon information and belief, deleted evidence from his Zeno-issued phone and laptop, which demonstrates an intent to conceal his unlawful use and disclosure of Zeno's confidential and trade secret information in clear violation of his Agreement with Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

11.     Upon information and belief, Randle, in coordination with the Individual Defendants, has likewise misappropriated confidential and trade secret information belonging to

Zeno to her personal benefit and the benefit of Impact Networking, which constitutes a violation of her Agreement with Zeno.

**ANSWER:**

Defendant denies the allegations in this paragraph.

12.    Upon information and belief, the Individual Defendants have participated in the solicitation of—or intend to solicit as soon as outside this Court's watchful eye—Plaintiff's key customers and prospects using Plaintiff's confidential and trade secret information; have otherwise improperly disclosed and/or used Plaintiff's confidential, proprietary, and highly sensitive business information; have improperly traded upon Plaintiff's goodwill and business relationships for their own benefit and the benefit of Impact Networking, Impact Texas, and Innovative Orange; and have unlawfully competed and intend to continue unlawfully competing against Plaintiff, in direct violation of their Agreements and Plaintiff's statutory and common law rights.

**ANSWER:**

Defendant denies the allegations in this paragraph.

13.    Impact Networking, Impact Texas, and Innovative Orange, upon information and belief, are and have been aware of the Individual Defendants' respective Agreements with Plaintiff, and their post-employment obligations associated therewith. Further, Impact Networking, Impact Texas, and Innovative Orange, upon information and belief, are and have been aware of the aforementioned violative actions of the Individual Defendants described herein, and, upon information and belief, have intentionally encouraged and facilitated (i) the misappropriation of Plaintiff's confidential, proprietary, and highly sensitive business information for their own benefit, as well as (ii) the infiltration and pilfering of Plaintiff's key employees and customers to gain an unfair competitive industry advantage in their efforts to expand into the Texas marketplace through Impact Texas. To that end, Defendant Impact Networking-the controlling manager and decision-maker of Impact Texas-has, on information and belief, promised to pay for and/or provide legal counsel to facilitate Defendants' wrongdoing.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

B.    **THE PARTIES**

14.    Plaintiff Visual Edge, Inc. is a Delaware Corporation that operates under the Zeno Imaging and TLC brands throughout the state of Texas and is the former employer of the Individual Defendants. Plaintiff maintains its principal place of business at 3874 Highland Park Northwest, North Canton Ohio, 44720.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

15.     Defendant Vaughan is a former Vice President of Marketing, Central Texas Branch Manager, Director of Sales, and Vice President of Sales at Zeno Imaging, who was employed by Plaintiff from in or around August 2013 through December 2019. Vaughan is a citizen and domiciliary of the State of Texas and has already made an appearance through his attorneys of record in this action.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

16.     Defendant Copeland is a former Vice President and Vice President of Professional Services at Zeno Imaging, who was employed by Plaintiff from in or around April 2009 through September 2020. Copeland is a citizen and domiciliary of the State of Texas and has already made an appearance through his attorneys of record in this action.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

17.     Defendant Randle is a former Sales Operations, Process and Funding Manager/Sales and Billing Coordinator/Sales Analyst at Zeno Imaging, who was employed by Plaintiff from on or about April 27, 2015 to November 3, 2020. Randle is a citizen and domiciliary of the State of Texas and has already made an appearance through her attorneys of record in this action

**ANSWER:**

Defendant admits the allegations in this paragraph.

18.     Defendant Roberts is a former Enterprise Account Executive at Zeno Imaging, who was employed by Plaintiff from on or about June 5, 2012 to November 30, 2020. Roberts is a citizen and domiciliary of the State of Texas and has already made an appearance through her attorneys of record in this action.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

19.     Defendant Figueroa is a former Managed IT Solutions Sales Specialist at Zeno Imaging, who was employed by Plaintiff from on or about May 20, 2019 to November 17, 2020. Figueroa is a citizen and domiciliary of the State of Texas and has already made an appearance through his attorneys of record in this action.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

20.     Defendant Walker is a former Managed IT Solutions Sales Specialist at TLC, who was employed by Plaintiff from on or about March 4, 2019 to November 2020. Walker is a citizen and domiciliary of the State of Texas and has already made an appearance through his attorneys of record in this action.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

21.     Defendant Impact Networking Texas, LLC is a foreign limited liability company organized and incorporated in the State of Illinois, maintaining its Texas principal place of business at 5825 North Sam Houston Parkway W., Suite 500, Houston, Texas 77086. Impact Texas is a branch of Impact Networking, LLC, and operates as a field services office of Impact Networking, LLC in direct competition with Plaintiff in Texas, and specifically the Houston metropolitan marketplace. Impact Texas has already made an appearance through its attorneys of record in this action.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

22.     Defendant Impact Networking, LLC is a limited liability company organized and incorporated in the State of Illinois, maintaining its principal place of business at 13875 W. Boulton Blvd, Lake Forest, Illinois, 60045, and transacting business in this judicial district through its sales and/or managerial representatives including, upon information and belief, the Individual Defendants. Impact Networking, LLC is the parent company and controlling manager that directs the activities of Impact Texas, maintaining a field services location in Houston, located at 5825 North Sam Houston Parkway W., Suite 500, Houston, Texas 77086, and is a direct competitor of Plaintiff in Texas, and specifically in the Houston metropolitan marketplace.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

23.     Innovative Orange, LLC is a limited liability company organized and incorporated in the State of Texas in December 2018 by Defendant Scott Copeland and Lorri Vaughan, the wife of Defendant Casey Vaughan, and maintains its principal place of business at 508 Riders Trail, Austin, Texas 78733.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

24.     Upon information and belief, as of November 2020, Defendant Vaughan is the Chief Operating Officer and a Partner at Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

25.     Upon information and belief, as of November 2020, Defendant Copeland is the President and a Partner at Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

26.     Upon information and belief, as of November 2020, Defendant Randle is the Office Coordinator at Impact Texas.

**ANSWER:**

Defendant admits the allegations in this paragraph.

27.     Upon information and belief, as of December 2020, Defendant Roberts is a Senior Account Manager at Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

28.     Upon information and belief, as of November 2020, Defendant Figueroa is a Senior Account Manager at Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

29.     Upon information and belief, as of December 2020, Defendant Walker is a Senior Account Manager at Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

### C.     JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over this matter pursuant to § 28 U.S.C. § 1331 because this Complaint includes claims for Defendants' violations of the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1832, *et seq*., a federal statute. This Court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 as the claims are substantially related to and arise out of the same common facts, and are therefore subject to applicable principals of supplemental jurisdiction.

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.

31.     Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b), as it is the district in which, *inter alia,* the Defendants are subject to personal jurisdiction, and/or the conduct complained of arose, the injury complained of is being inflicted, and a substantial part of the events giving rise to the claims alleged herein occurred. Venue is also proper in the Southern District of Texas pursuant to enforceable forum selection clauses in the Individual Defendants' Agreements. (*See* **Exhibits A-1 to A-3**, at ¶ 17; **Exhibits A-4 to A-5**, at ¶XIII; **Exhibit A-6**, at ¶ 15.).

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required. To the extent an answer is required, Defendant does not contest venue.

**D.**     **THE FACTS**

32.     Plaintiff is engaged in the business of, among other things, selling, leasing and servicing office equipment and systems, including stand alone and/or interconnected and integrated systems for digital and analog copiers, printers, telecopiers, print-on-demand services, networking facilities management, document outsourcing, technical support services, equipment maintenance, systems analysis, supplies, and other office equipment and related services and products.

**ANSWER:**

Defendant denies the allegations in this paragraph.

33.     Plaintiff maintains Zeno Imaging branch offices in Houston and Austin, through which Plaintiff conducts business with and for Zeno customers, which, in turn, conduct business in Texas and outside the state of Texas.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

34.     The aforementioned Houston and Austin branch offices were acquired by Plaintiff in late 2018 through its purchase of the assets of the business formerly known as Zeno Digital Solutions, LLC ("ZDS"), which purchase included but was not limited to, all of ZDS's rights and obligations under employment contracts with its employees like Copeland and Vaughan, and all of the intellectual property and the benefit of the substantial investment ZDS had made in the development of its business.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

35.     Plaintiff similarly maintains TLC branch offices in Angleton, Austin, Longview, Texarkana, and Tyler, through which Plaintiff conducts business with and for TLC customers, which, in turn, conduct business in Texas and outside the state of Texas.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

36.     With the exception of Defendant Walker, the Individual Defendants were all employees of ZDS prior to the Visual Edge acquisition. Each became employed under Visual Edge's (doing business as Zeno) umbrella following the acquisition.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

37.     In connection with the development of its Zeno Imaging, TLC, and other business, Plaintiff expended substantial time, labor, and money to research and develop skills, methods, techniques, plans, programs, processes, data, and forms that, singularly and collectively, constitute Plaintiff's trade secrets and confidential information.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and thereby denies them.

38.     Furthermore, Plaintiff spends a significant amount of time and resources in developing and maintaining information regarding its secrets, clients, and potential clients. Indeed, Plaintiff's business as Zeno Imaging, TLC, and other brands has been built on trust, goodwill, and client satisfaction over a long period of time.

**ANSWER:**

Defendant denies the allegations in this paragraph.

(a)     **COPELAND AND VAUGHAN**

39.     From in or around August 2013 through December 2019, Defendant Vaughan served in various executive roles at Zeno, most recently as the Vice President of Sales.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

40.     From in our around April 2009 through his departure in September 2020, Defendant Copeland similarly served in various executive roles, most recently as both Zeno's marketplace Vice President in Central Texas and Vice President of Professional Services.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

41.     In their roles as top-level Zeno executives, who held various key roles at Zeno throughout their tenure at the company, Vaughan and Copeland orchestrated, coordinated, and developed Zeno's sales efforts and customer relationships throughout the State of Texas and across multiple municipalities, including but not limited to, Houston, Austin, and Dallas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

42.     By virtue of their respective roles as Director and Vice President of Sales and Vice President and VP of Professional Services, Vaughan and Copeland both had access to Zeno's entire customer list, including past and active customers and key prospects, and gained familiarity with a large set of Zeno's customers, over a broad swath of geography, because they would be consulted whenever a Zeno customer was interested in purchasing or leasing a print production machine or professional services offered by Zeno, and they would often set strategy and pricing in connection with customers' print production and/or managed IT services needs.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

43.     Vaughan resigned from Zeno in or around December 2019, and commenced employment with another company. In or around November 2020, however, Vaughan joined Copeland at Zeno's competitor, Impact Texas.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

44.     Copeland resigned from Zeno in or around September 2020, and commenced employment with Impact Texas shortly thereafter in or around November 2020.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

45. As a result of their employments with Zeno, however, Copeland and Vaughan developed familiarity with customer profiles and sales plans with respect to the actual and prospective customers Zeno services and/or manages and gained unlimited access to the confidential database to which they were granted access in connection with their executive duties and responsibilities at Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

46. Indeed, by virtue Vaughan's executive position as Director and Vice President of Sales and Copeland's executive position as Vice President and Vice President of Professional Services, Copeland and Vaughan had virtually unlimited access to Zeno's customer list, including but not limited to detailed information concerning all of Zeno's actual customers and active prospects.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

47. As a result of their employment and the authorization provided to them by Zeno, Copeland and Vaughan gained access to Zeno's books and records, the confidential information contained therein, and especially: (a) the identity of Zeno's customers, and potential customers they had solicited and/or profiled, including their names and addresses, management executives, account managers and/or contact persons, current business terms and transactions, transaction histories, purchasing and servicing requirements, costs and prices, contract and leasing terms, contract and leasing cycles, equipment and systems specifications, packaging features, profitability considerations, open sales opportunities, cost sensitivities, growth plan, distribution and delivery systems, training techniques, and business efficiencies; (b) Zeno's key personnel, including the sales revenue generated, performance, product knowledge, and clientele; (c) Zeno's marketing strategies, pricing and packaging structure, schedules and strategies, product design, features and initiatives, discount policies, future business plans, vendor identities, training techniques, strengths and weaknesses with its customers, and a wide range of profitability and cost considerations; and (d) other business and customer-related information that provides Zeno with a significant advantage or "head start" over its competitors.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

48. More specifically, the confidential customer lists, records, and databases that Zeno laboriously compiled, and to which Copeland and Vaughan had unfettered access and use on behalf of Zeno to obtain and utilize significant advantages in the sales process, includes some combination or all of the following information:

(a) customer identities, classifications, and profiles;

(b) customer addresses, phone numbers, locations, and site-specific personnel information;

(c) customer purchasing agents, organizational structure, supervisors and account managers, political sensitivities, and other organizational considerations;

(d) past customer purchases and leases of copiers, printers, facsimile machines, servers, networks, multi-functional devices, and other office equipment, including their age, makers, model numbers, product characteristics and capabilities, special functions, and uses;

(e) the prices paid by the customer;

(f) the revenue levels and profitability considerations associated with each customer;

(g) the discount terms and conditions applicable to any given copier, printer, facsimile machine, or other office equipment product;

(h) the contract terms for each copier, printer, facsimile machine, or other product purchased by the customer;

(i) the terms, length and expiration dates of the customers' lease and service agreement contracts for each product in the customers' offices and inventory;

(j) customer preferences, needs, priorities, business plans, budgets, and special business considerations;

(k) sales proposal terms, plans, and strategies;

(l) summaries and notations of past communications with customers reflecting customer inquiries, requests for proposals, quotes, and product capabilities;

(m) special cost, delivery, and service considerations;

(n) dates of past sales calls, future appointments, and recognized sales prospects or other follow-up opportunities;

(o) the customers' business cycles, schedules, buying patterns, and purchasing considerations;

(p) business characteristics relevant to the business of any given customer and/or the sensitivities, needs, priorities, and concerns of their purchasing representatives;

(q) the customers' different location considerations, usages, volume, production levels, and requirements;

(r) dates on which future sales calls were invited, suggested, or would otherwise be appropriate as a matter of timing or invitation;

(s) credit and payment terms, payment schedules, financing terms, and past credit histories;

(t) customer complaints, concerns, and the strengths and weaknesses of Zeno's performance and standing with customers, the reasons therefore, and proposed strategies to take advantage of the strengths, resolve the weaknesses, etc.;

(u) the configurations and compatibilities of the customers' equipment, work-flow, command stations, networking and interconnectivity possibilities, usages, needs and potential sales opportunities; and

(v) numerous other customer characteristics and variables facilitating the sales process and promoting Zeno's ability to package a successful sale.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

49. The customer information compiled in Zeno's customer database is valuable information that gives Zeno a significant competitive advantage in developing effective marketing strategies and sales proposals to customers.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

**(b)    RANDLE, ROBERTS, FIGUEROA, AND WALKER**

50.    From in or around April 2015 to November 2020, or for almost six (6) years, Randle was both a Sales Operations, Process and Funding Manager and Sales Billing Coordinator and Sales Analyst for Zeno. In her roles, Randle audited approximately 500 sales orders per quarter, interfaced with multiple leasing companies for all sales transactions, analyzed and evaluated Zeno's sales team's performance and productivity across all U.S. markets, developed processes and training manuals for sales teams across all U.S. markets, and worked on team designing and implementing Enterprise Content Management (ECM) for Zeno's Customer Equipment Ordering System. Additionally, Randle dealt closely with accounts payable, overseeing invoicing of a large swath of Zeno's clients. Randle resigned from Zeno on or around November 3, 2020, and joined Impact Texas shortly thereafter.

**ANSWER:**

Defendant denies the allegations in this paragraph.

51.    From in or around June 2012 to December 2020, or for almost nine (9) years, Roberts was an Enterprise Account Executive at Zeno. In her role, she was responsible for managing the business relationships of enterprise accounts, while promoting managed services for both internal and outsources processes and functions intended to improve Zeno's business operations, reduce business risk, and provide a predicable expense model for business technology. Roberts resigned from Zeno on or around November 30, 2020, and commenced employment with Impact Texas a few days later in December 2020.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

52.    From in or around May 2019 to November 2020, or for almost two (2) years, Figueroa was a Managed IT Solutions Specialist at Zeno. Likewise, from in or around March 2019 to December 2020, or almost two (2) years, Brian Walker was a Managed IT Solutions Sales Specialist for Plaintiff at TLC.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

53.    In their roles, Figueroa and Walker were responsible for selling and integrating Zeno's innovative business technology and services, namely its IT Print and Managed Network services, to existing and prospective clients in the Texas marketplace. Their responsibilities also included prospecting clients to convert to sales, developing and maintaining business relationships with existing and prospective customers, developing and managing all phases of the business

development cycle, including managing proposal negotiations, statements-of-work, and completion of all contract details, as well as meeting an individua l sales quota.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

54. Figueroa resigned from Zeno on or around November 17, 2020, and immediately commenced employment with Impact Texas in the same month.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

55. Walker resigned from Zeno on or around November 30 2020, and promptly commenced employment with Impact Texas in December 2020.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

56. As a result of their employment, Plaintiff provided Randle, Roberts, Figueroa, and Walker with customer accounts, customer referrals, reassignments of former and current Zeno Imaging/TLC accounts, customer leads and account assignments, and new accounts generated by Plaintiff's goodwill, name recognition, reputation, promotions, and national and/or local marketing and advertising campaigns. Randle, Roberts, Figueroa, and Walker became intimately familiar with all aspects of the Zeno Imaging and/or TLC customer accounts they serviced and/or supervised, and each became a repository of information obtained, accumulated, and developed as the result of many customer sales calls, service calls, past transactions, sales proposals, and intelligence gathering and distillation. This repository of confidential customer information was continually processed, built up, refined, updated, and developed on behalf of the company. Thus, collectively, they have the power to inflict severe damage on Plaintiff's business where such information is exploited to the benefit of their new employer, and direct market competitor, Impact Texas.

**ANSWER:**

Defendant denies the allegations in this paragraph.

57. In addition to the foregoing, Plaintiff provided Roberts, Figueroa, and Walker with secretarial and staff services; sales assistance; research; the benefit of Plaintiff's advertising,

goodwill, and name recognition; the use of experts and highly trained technicians in computer analog and digital copier maintenance, networking, business systems, electronic imaging, hardware and software products; training in copier and printing systems, other office technology products, and services; and promotional, marketing, and sales support.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

58. All of the customers serviced by Randle, Roberts, Figueroa, and Walker were generated by and through their employment with Plaintiff and are the direct and indirect result of Plaintiff's investment of years of time, effort, and expense into the acquisition and development of the customers' accounts.

**ANSWER:**

Defendant denies the allegations in this paragraph.

59. Furthermore, Plaintiff has taken substantial measures and exercised reasonable diligence to prevent its trade secrets and confidential information from becoming available to persons other than those selected by Plaintiff for the purpose of furthering its business. For example, Plaintiff requires any employee who is granted access to confidential and trade secret information to sign non-disclosure and non-compete agreements and/or other similar agreements that restrict the disclosure and use of such information. These agreements all contain provisions relating to confidential information and requiring the return of all company documents upon termination of the employment relationship. Plaintiff also requests its employees to review and sign various policies, including an Employee Handbook, which warns employees to avoid conflicts of interest caused by, among other things, misusing Zeno Imaging and/or TLC information. Plaintiff physically limits access to information by password-protecting their networks and grant their employees different levels of access to confidential information, depending on their position with the company. Information is strictly disclosed on a "need-to- know" basis. Furthermore, Plaintiff has a firewall system to prevent unauthorized access to its networks and provides login authentication.

**ANSWER:**

Defendant denies the allegations in this paragraph.

### (c)   COPELAND AND VAUGHAN'S EMPLOYMENT AND CONTRACTUAL OBLIGATIONS TO ZENO

60. At the time of their hires, Copeland (in 2009) and Vaughan (in 2013) were asked to sign, and did sign, individual Non-Disclosure and Non-Compete Agreements with the acquired

ZDS[1] as a condition of their employment. (*See* **Exhibit A-4** and **Exhibit A-5**, respectively (hereinafter, the "Copeland and Vaughan Agreements").

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

61.     Pursuant to the Copeland and Vaughan Agreements, Zeno agreed to disclose to Copeland and Vaughan during their employment certain confidential information belonging to Zeno, including but not limited to: customer and client lists, lists of prospective customers and client, manufacturer pricing for products, Zeno's practices in determining pricing for its clients or customers, customer and client preferences regarding equipment or services, Zeno's prior or planned bids to existing or prospective clients or customers, strategies regarding bids, Zeno's methods of handling and servicing client, Zeno's current and future marketing plans and strategies, Zeno's approach to and strategies for obtaining and maintain customers and clients, Zeno's hiring decisions and process by which such decisions are made by Zeno, Zeno's pay structure for employees, Zeno's plans for employee compensation and hiring, and other business information concerning Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

62.     After Copeland and Vaughan became employees, Zeno actually disclosed such information to Copeland and Vaughan, in direct reliance upon the covenants contained in their Agreements.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

63.     Among those covenants, Copeland and Vaughan agreed to keep all of Zeno's proprietary information confidential even after the termination of their employment. In Section II of the Copeland and Vaughan Agreements, Copeland and Vaughan agreed that:

---

[1] As previously noted, all of ZDS 's property, assets and rights with respect to its employment contracts, including those with respect to Copeland and Vaughn 's Non-Disclosure and Non-Compete Agreements, were among the "Acquired "Assets," pursuant to the Asset Purchase Agreement with Zeno Digital. Thus, Plaintiff Zeno became the counterparty to Copeland's and Vaughan's Non-Disclosure and Non-Compete Agreements (*i.e.,* the "Employer"), and all post-employment obligations associated therewith, remain in full force and effect.

Employee agrees not to use or disclose Confidential Information for any purpose or reason after Employee's employment with Employer ends. Also, during the course of Employee's employment, Employee agrees not to use or disclose Confidential Information for any purpose other than to advance Employer's business interests.

(**Exhibit A-4**, at ¶ II; **Exhibit A-5**, at ¶ II).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

64.    The terms of the aforementioned agreements provide that at the end of Copeland and Vaughan's employment, they were required to "return to or leave with Employer all Confidential Information which Employee has in Employee's direct or constructive possession." (*Id.* at ¶ IV).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

65.    Copeland and Vaughan also agreed to refrain from soliciting any current or potential customer of Zeno for two years following their employment. According to the non-solicitation provision of the Copeland and Vaughan Agreements, Copeland and Vaughan promised:

Employee agrees that for a period of two years after the end of Employee's employment with Employer, Employee will not seek to hire, directly or indirectly, any person who is or was employed by Employer during Employee's employment with Employer.

(*Id.* at ¶ V).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

66.    Copeland and Vaughan similarly agreed to refrain for two years after the end of their employment from:

. . . soliciting or contracting any person or entity who was (1) a customer or client of Employer during Employee's employment with Employer; (2) known by Employee to be a prospective customer or client of Employer during Employee's employment with Employer; or (3) known by Employee to be affiliated with a client or customer of Employer during Employee's employment with Employer.

(*Id.* at ¶ VI)

**<u>ANSWER</u>:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

67.    Further, Copeland and Vaughan agreed to certain restrictions on work activities following termination of their employment:

Employee agrees that for a period of two years after the end of Employee's employment with Employer, Employee will not, directly or indirectly, accept or perform any work to or for or on behalf of any customer or client for whom Employer provided services during the time employee worked for Employer if such work involves any of the following:

- Selling, servicing or repairing printers, multifunction printers, copiers, scanners or other office equipment of the type and/or variety sold, serviced or repaired by Employer

- Providing digital document workflow solutions

- Providing business advice that relates to copying, printing, faxing, scanning or archiving of documents

- Providing digital devices for the purpose (In whole or in part) of document management

- Printer fleet management

- Production printing

- Providing mailing solutions or other services relating to meeting client or customer mailing needs

- Selling, servicing or repairing document management software

- Selling, servicing or repairing equipment or information technology services

- Providing facilities management services or the type provided by Employer

- Selling or providing any other products or technologies that Employer also sold or provided during Employee's employment with Employer

(*Id.* at ¶ VII).

**ANSWER**:

      This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

68.     Notably, the Copeland and Vaughan Agreements limit the scope of any prohibited competition in a manner that is reasonably necessary to protect Zeno's legitimate business interests:

Employee's non-competition restriction is limited to work that is both (1) performed for or on behalf of any customer or client for whom Employer provided services during the time Employee worked for Employer; and (2) within the geographical territory in which Employee actually worked while performing services for Employer.

(*See Id.*).

**ANSWER**:

      This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

69.     During their employment, Copeland and Vaughan serviced Zeno clients and customers located throughout the State of Texas which, in turn, had locations within Texas and across the country. Moreover, and as a result of the 2018 acquisition by Plaintiff discussed herein, Copeland and Vaughan expanded their knowledge of Plaintiff's customer base as they were introduced to and reviewed marketing, customer information, pricing, and strategic direction materials for all of Plaintiff's operations.

**ANSWER**:

      This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

70.     In addition to the above agreements, Zeno requires employees to acknowledge and execute certain documents, including Zeno's Employee Handbook. (*See* **Exhibit B** (Handbook). The Employee Handbook warns against employee conflicts of interest, including but not limited to conflicts of interest caused by an employee misusing confidential information belonging to Zeno. (*See* **Exhibit B** at p. 22). The Employee Handbook also contains a provision stating that employees should have "no expectation of privacy" concerning information stored on Zeno computer equipment, and that such equipment was subject to search at any time. (See Id.).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

### (d)     RANDLE, ROBERTS, FIGUEROA, AND WALKER'S CONTRACTUAL OBLIGATIONS TO ZENO

71.     As a condition of employment at the time of their respective hires, Figueroa (in 2019), and Walker (in 2019) agreed to sign, and did sign, individual Non-Disclosure and Non-Competition Agreements with Zeno (in the case of Figueroa under the Zeno Imaging brand and TLC in the case of Walker). Likewise, as a condition of continued employment following Plaintiff's acquisition of the assets of ZDS, Roberts (in 2018) agreed to sign, and did sign, the same Non-Disclosure and Non-Competition Agreement. (*See* **Exhibit A-1** (the "Roberts Agreement"), **Exhibit A-2** (the "Figueroa Agreement"), and **Exhibit A-3** (the "Walker Agreement"), respectively).

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

72.     Defendant Randle, as a condition of her continued employment (in 2018), agreed to sign, and did sign a Non-Disclosure and Non-Solicitation Agreement with Zeno. (*See* **Exhibit A-6** (the "Randle Agreement"). Nonetheless, Randle's obligations to Zeno are identical to those agreed to by Roberts, Figueroa, and Walker, with the exception of the non-competition component.

**ANSWER:**

Defendant denies the allegations in this paragraph.

73.     Pursuant to their agreements with Plaintiff, Plaintiff agreed to disclose to Randle, Roberts, Figueroa, and Walker certain confidential information belonging to Plaintiff, including but not limited to: customer and client lists, client prospect and prospective client material, price lists, rate structures, client service and preference records, Zeno appointment books, payroll information, sales and profit data, marketing strategies and information, prior and planned bids, strategies associated with decisions and the process by which such decisions are made, company

management and pay structure, formulas, and other information of a technical, financial or business nature now or hereafter existing or developed that is unique to Zeno and/or provides Zeno with a competitive advantage in the marketplace. (See Id. at 7).

**ANSWER:**

Defendant denies the allegations in this paragraph.

74. During the course of their employment with Plaintiff, Plaintiff actually disclosed such information to Randle, Roberts, Figueroa, and Walker, in direct reliance upon the covenants contained in each of their agreements.

**ANSWER:**

Defendant denies the allegations in this paragraph.

75. Among those covenants, Roberts, Figueroa, and Walker agreed to keep all of Zeno's proprietary information confidential even after the termination of their employment with Zeno Imaging or TLC (Walker). In Paragraph 7, Roberts, Figueroa, and Walker each agreed that:

At all times, both during and after the termination of employment, the Employee shall keep and retain in confidence and shall not disclose, except as required in the course of the Employee's employment with Zeno/TLC, to any person, or as may be required by law, firm or corporation, or use for the Employee's own purposes, any Confidential Information.

(*See Id.*).

**ANSWER:**

Defendant denies the allegations in this paragraph.

76. The terms further provide that at the end of their employment, each former employee is required to "return all Zeno documents in Employee's possession, custody, or control." (*See Id.* at ¶ 6).

**ANSWER:**

Defendant denies the allegations in this paragraph.

77. Roberts, Figueroa, and Walker also agreed that:

. . . during the term of his/her employment, and for a period of two years after termination of employment from Zeno/TLC (whether voluntary or involuntary), Employee will not, directly or indirectly:

(a) Become associated or affiliated with, employed by, or financially interested in, any business or entity which engages (or is preparing to engage) in competition

with Zeno/TLC's business, including, but not limited to, participating in or having any involvement with or responsibility for offering, leasing, selling, marketing, providing or otherwise promoting any of the same products or services among those included in Zeno/TLC's Business for which Employee had any direct or indirect management, product line, customer or sales territory responsibility or role, either as principal, agent, manager, supervisor, employee, partner, director, officer, consultant or shareholder . . . ;

(b)     Engage in any activity, or make any effort, including in any role as consultant or advisor, to solicit, encourage, conduct business with, accept business from, or induce any customer or prospective customer of Zeno/TLC to obtain business and/or services from any entity (other than Zeno/TLC) engaged in any activity competitive with Zeno/TLC's Business; and

(c)     Cause or attempt to cause, or engage in any activity having the tendency or effect of causing, any customer or vendor of Zeno/TLC to modify, reduce, divert, diminish or curtail its business with Zeno/TLC.

(*See Id.* at 8).

**ANSWER:**

Defendant denies the allegations in this paragraph.

78.     Randle, Roberts, Figueroa, and Walker further agreed to refrain for two years after the end of their employment with Plaintiff from:

. . . directly or indirectly, soliciting, enticing, or encouraging any employee of Zeno/TLC to leave Zeno/TLC and Employee further agrees not to hire or employ (or cause and/or assist), whether directly or indirectly, any third party to hire or employ) any such employee.

(*See Id.* at ¶ 10).

**ANSWER:**

Defendant denies the allegations in this paragraph.

79.     Each agreement limits the scope of the employees' prohibited competition in a manner that is reasonable and necessary to protect Plaintiff's legitimate business interests:

. . . In recognition of the geographic scope of Zeno/TLC's Business, the restrictions on competition . . . are intended to cover the following geographic areas and/or account coverage, whether regional or national in scope:

Any business line, area and/or account assigned by Zeno/TLC to Employee, or under Employee's management, control and/or responsibility, or concerning which

Employee provided any direct or indirect collaboration or assistance during the two (2) year period immediately preceding the termination of Employee's employment.

(*See Id.* at ¶ 9).

**ANSWER:**

Defendant denies the allegations in this paragraph.

80.     During their employment with Plaintiff, Roberts and Figueroa serviced Zeno Imaging related clients and customers while Walker serviced TLC related clients and customers, all located throughout the State of Texas.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

81.     In addition to the agreements discussed above, Randle, Roberts, and Figueroa are subject to the same provisions of Zeno's Employee Handbook regarding "no expectation of privacy," as discussed in Paragraph 66 above. (*See* **Exhibit B** at p. 22).

**ANSWER:**

Defendant denies the allegations in this paragraph.

> **(e)     THE INDIVIDUAL DEFENDANTS' NEARLY EN MASSE DEPARTURES FROM ZENO AND EMPLOYMENT WITH IMPACT NETWORKING**

82.     In November 2020, Defendants Copeland and Vaughan, upon information and belief with the express or tacit approval of Impact Networking and Impact Texas, began the wholesale solicitation and recruitment of key personnel at Zeno to join Impact Networking to grow its competing business.

**ANSWER:**

Defendant denies the allegations in this paragraph.

83.     At least five other now former Zeno employees--including Defendants Randle, Roberts, Figueroa, and Walker--resigned to join Impact Networking in or about November 2020. Numerous other Zeno employees were specifically targeted and recruited by one or more of the Defendants, including Impact Networking. In fact, Impact Networking executives: (1) flew to Houston, Texas on multiple occasions to meet with several of the targeted Zeno employees; (2) encouraged Vaughan and Copeland to build its Impact Texas team with Zeno's top talent; and (3)

actively participated in the charade of trying to make it appear that Zeno's employees reached out to Impact Networking on their own without any involvement or wrongdoing of the Defendants.

**ANSWER:**

Defendant denies the allegations in this paragraph.

84.     Plaintiff's investigation surrounding the Individual Defendants' nearly *en masse* departures from Zeno to join Impact Texas is just beginning. However, Plaintiff has already discovered information causing grave concern about Defendants' activities and intentions, which includes but is not limited to:

    (a)     Copeland, Roberts, and, on information and belief, other Individual Defendants forwarding numerous documents constituting Plaintiff's confidential, proprietary, and trade secret information to their personal accounts prior to their departure to aide in the solicitation of Plaintiff's customer accounts; (*See* **Exhibit C**);

    (b)     Defendant Figueroa wiping his company laptop, including email communications, prior to returning it at the end of his employment, as well as soliciting a Zeno customer for Impact Networking and Impact Texas to facilitate the buyout of that customer's Zeno lease;

    (c)     Defendants Copeland, Vaughan, and Roberts retaining a veritable treasure trove of Zeno's trade secret and/or confidential information following their resignations from Zeno, including but not limited to: (a) customer lists containing detailed information about Zeno's revenues, profitability, segmentation, volumes, and other related information about all of Zeno's customers; (b) pricing information relating to Zeno's customers; (c) customer proposals and quarterly business reviews for specific Zeno customers; (d) presentations prepared by Zeno's leadership, including Copeland, as part of Zeno's go-to-market strategy after Visual Edge acquired the assets of ZDS; (e) sales data, quota attainment data and other customer information broken down by individual Zeno sales representatives, along with information relating to the commissions and other compensation those Zeno representatives received from such sales; and (f) a host of reports, presentations, and other documents used by Plaintiff to operate its business;

    (d)     Copeland, Vaughan, Impact Networking, and Impact Texas' use of Zeno's confidential and/or trade secret materials as the basis for their go-to- market strategy. Indeed, Copeland pitched a business plan to Impact Networking beginning in July 2020 that relied on Zeno's trade secret and/or confidential information that Copeland, Vaughan, and Innovative Orange retained for their own use and was predicated on pilfering Zeno's employees and customer base. Later, Copeland shared with Impact Networking and its corporate management team detailed information concerning target Zeno

customer accounts, Zeno customer contacts, and Zeno marketing touches, all of which Copeland and Innovative Orange had taken from Zeno; and

(e)     On information and belief, each of the other Individual Defendants' active participation in the solicitation of Plaintiff's employees and/or customers and/or retention of Plaintiff's trade secret and/or confidential information in violation of his or her contractual and other obligations

**ANSWER:**

Defendant denies the allegations in this paragraph.

(f)     **DEFENDANTS' ADMISSIONS, LIES AND UNREASONABLE "CONDITIONAL" ASSURANCES REGARDING THEIR ACTIVITIES**

85.     Upon learning of the Individual Defendants' departures and their initial surreptitious and unlawful activities, on December 1, 2020, Plaintiff sent Defendants Randle, Roberts, Figueroa, Walker, letters demanding that they cease and desist their unlawful activities, and "come clean" regarding what they had done to that point. Defendant Impact Networking was copied on these correspondences. *(See* **Exhibit D-1** ("Randle Letter"), **Exhibit D-2** ("Roberts Letter"), **Exhibit D-3** ("Figueroa Letter"), **Exhibit D-4** ("Walker Letter")).

**ANSWER:**

Defendant denies the allegations in this paragraph.

86.     On December 4, 2020, counsel for Defendants Roberts, Figueroa, and Impact Networking provided a collective response on their behalf, in which counsel addressed the matters set forth in the December 1, 2020 letters from Plaintiff's counsel. *(See* **Exhibit D-5** ("Defendants' Dec. 4 Response Letter")).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

87.     Defendants' Dec. 4 Response Letter noted that Defendant Roberts "has certain files and other information she needs to return," constituting an admission that Defendant Roberts was, and upon information and belief remains, in possession of Plaintiff's confidential information.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

88.     Defendants' Dec. 4 Response Letter further stated that Randle, Roberts, Figueroa, and Walker (1) "will honor the provisions in their agreements relating to the non-solicitation of Visual Edge employees"; and (2) will honor the provisions in their agreements relating to the non-solicitation of Visual Edge customers that they serviced", but only if Plaintiff agrees to pay these four Defendants certain amounts to which they are not entitled and are wholly unrelated to the Individua l Defendants' respective agreements with Plaintiff. (*See* **Exhibit D-5**).

**ANSWER:**

Defendant denies the allegations in this paragraph.

89.     On December 3, 2020, Plaintiff's counsel similarly sent letters to Defendants Copeland and Vaughan demanding they cease and desist their unlawful activities, and admit their unlawful conduct to date. Defendant Impact Networking was also copied on these correspondences. (*See* **Exhibit D-6** ("Vaughan Letter"), **Exhibit D-7** ("Copeland Letter"). Plaintiff's gave Copeland and Vaughan until December 4, 2020 to respond. *Id.*

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

90.     On December 8, 2020, Defendants Copeland and Vaughan, through counsel, responded. (*See* **Exhibit D-8** ("Defendants' Dec. 8 Response Letter").

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

91.     In Defendants' Dec. 8 Response Letter, Defendants Copeland and Vaughan denied that they owed any post-employment obligations to Zeno. *Id.*

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

### (g)     Copeland, Vaughan, and Innovative Orange's Additional Misconduct

92.     As previously noted, the Houston and Austin Zeno Imaging branch offices through which Plaintiff conducts business with and for Zeno Imaging customers was acquired in late 2018 through Visual Edge's purchase of substantially all of the assets of ZDS. In connection with the acquisition and pursuant to an asset purchase agreement effective October 31, 2018 (the "VET-

ZDS APA"), Visual Edge acquired all of ZDS's intellectual property relating to ZDS's "Business" -- defined as the business relating to all but certain limited "Excluded Assets." Among the assets acquired by Visual Edge were "all rights that [ZDS] may have under all contracts, agreements . . . relating to the Business." Excluded from the acquisition was a small subset of assets used exclusively in ZDS's Dallas, Texas location and ZDS's professional services business (the "Professional Services Business").

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

93. Following the sale of substantially all of its assets to Visual Edge, ZDS retained the Professional Services Business and all assets and/or liabilities associated with it. The Professional Services Business primarily involved services related to business process automation software that ZDS licensed from a company called Laserfiche and provided to a small population of ZDS' customer base who had purchased or leased other equipment (e.g., copiers/printers) from ZDS. That small population of ZDS's customer base consisted of only 22 of the several thousands of customers acquired by Visual Edge.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

94. Unbeknownst to Visual Edge in or around early 2019, ZDS's owner sold the Professional Services Business to, on information and belief, Defendants Vaughan and Copeland, which was then incorporated into a newly formed entity-Defendant Innovative Orange. As part of this sale, Innovative Orange was assigned the software and professional services aspects of the leases between ZDS and 22 specific professional service related customers. Innovative Orange also purchased a few laptops and phones from ZDS's retained Dallas location and ZDS's intellectual property used *exclusively* in ZDS's professional services business for Ten Dollars ($10.00).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

95. Prior to the sale of ZDS's assets to Visual Edge, the Professional Services Business of ZDS had entered into contracts with a number of customers for the sale or lease of the aforementioned Laserfiche software. ZDS's contracts with these customers regularly consisted of three components: equipment lease or sale; after-sale service and support; and professional services for development and Laserfiche licensing. In most cases, all three components were

bundled into a single contract. These contracts and leases were regularly sold to finance companies that funded the equipment leasing or sale portion of the contract but did not fund the after-sale service and support or the professional services portion of the contract. As a result, ZDS was paid and received the sales revenue up front although there were continuing recurring costs and expenses related to the after-sale service and support required under the contract with the customers. These Laserfiche-related contracts were subsequently transferred to Innovative Orange upon the purchase of the Professional Services Business by Vaughan and Copeland through Innovative Orange.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

96.     In or around mid-2020, it was discovered that Innovative Orange through Copeland, Vaughan, and others were submitting costs and expenses for the professional services portion of the Laserfiche contracts for Visual Edge to pay. When questioned about these costs and expenses, Visual Edge was falsely advised that the costs and expenses being submitted for payment related to service and support for Laserfiche contracts that had been entered into after the October 31, 2018 asset purchase and for which sufficient revenue would be paid to cover the costs and expenses. In reality, however, the majority of the costs and expenses being passed on to Visual Edge to pay related to contracts that had been entered into by ZDS before the October 2018 asset purchase, and where ZDS had been paid all of the revenue up front but had not accrued for the subsequent recurring costs and expenses associated with the after-sale service and support required by the contracts with the customers.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the

allegations in this paragraph are denied.

97.     The responsibility to pay the recurring costs and expenses for Laserfiche-related customer contracts that had been entered into prior to the October 2018 VET-ZDS APA was exclusively upon either ZDS's owner or Innovative Orange, not Visual Edge who specifically excluded the Professional Services Business from the October 2018 acquisition. On information and belief, Defendants Vaughan, Copeland, and Innovative Orange were fully aware that Visual Edge did not acquire any of Professional Services Business assets or liabilities. Despite knowing this, Vaughan, Copeland, and Innovative Orange fraudulently and under false pretenses submitted and obtained approval of invoices relating to such costs and expenses for Visual Edge to pay and that Visual Edge did pay in an amount exceeding $330,000.00, all during the time Copeland was employed in a fiduciary capacity with Visual Edge.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

98.     As recently as April 2021, Copeland and Innovative Orange has sent demand for and attempted to have Visual Edge pay for $249,451.71 in additional costs and expenses that, on information and belief, Innovative Orange and Copeland know pursuant to the terms of October 2018 VET-ZDS APA and Innovative Orange's 2019 agreement with ZDS (the "IO APA") are liabilities of parties other than Visual Edge.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

99.     Moreover, and to excuse their rampant theft of Plaintiff's confidential and trade secret information, Defendants Copeland and Innovative Orange have asserted that Innovative Orange's purchase (for $10) of all of the "intellectual property used *exclusively* in [Zeno Digital's] professional services business" included anything and everything related to *all other aspects* of ZDS's business *that had already been sold* to Visual Edge under the October 2018 VET-ZDS APA. (*See* **Exhibit E** ("IO Demand").

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

100.    Defendant Copeland's "made-for-litigation" argument defies the plain language of the IO APA, the VET-ZDS APA, and the actual business practices of Zeno.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

      **(h)    THE IRREPARABLE HARM DEFENDANTS ARE INFLICTING UPON ZENO**

101.    In direct violation of one or more of Defendants' obligations, Plaintiff believes and therefore avers, upon information and belief, that Defendants are competing and/or preparing to compete with Plaintiff in the same territories with respect to the same actual and potential customers to which the Individual Defendants' were assigned while at Zeno or TLC; that, upon information and belief, the Individual Defendants, particularly Defendants Copeland and Vaughan, have already solicited Plaintiff's customers; that Defendants are planning on further

soliciting and diverting Plaintiff's customers; and that Defendants have retained, confiscated and/or used Plaintiff's confidential and proprietary information, and/or that Defendants will inevitably use such information in their competitive activities, especially including information pertaining to actual and prospective Zeno/TLC customers and the business and communications conducted by Plaintiff with said customers

**ANSWER:**

Defendant denies the allegations in this paragraph.

102.    Upon information and belief, Defendants each either have used or plan to use, rely upon, disclose, or draw upon Plaintiff's customer records or information without authorization and have or will otherwise misappropriate valuable Zeno/TLC customer records or information, either affirmatively and/or inevitably as a result of the Individual Defendants' past access, knowledge, and activities in supervising, servicing, and communicating with Plaintiff's actual and prospective customers.

**ANSWER:**

Defendant denies the allegations in this paragraph.

103.    Defendants' use and/or conversion of the information utilized by Plaintiff to conduct its business and to maintain an advantage over its competitors, including, but not limited to, the names, addresses, account information, price and purchase information, and strategies concerning Plaintiff's customer base, and Defendants' solicitation of Plaintiff's customers whose accounts the Individual Defendants' formerly serviced, supervised, learned of, and/or had contact with while employed with Plaintiff, and/or Plaintiff's accounts for whom the Individual Defendants were otherwise responsible, will inevitably cause Plaintiff great and irreparable harm, injury, loss of office stability, standing, and incalculable future revenues.

**ANSWER:**

Defendant denies the allegations in this paragraph.

104.    Plaintiff alleges, upon information and belief, that Defendants have engaged in, are preparing to engage in, and/or are continuing to engage in, *inter alia,* the following acts:

>       (a)      converting the information contained in confidential Zeno/TLC business records, specifically including the names, addresses, telephone numbers, business dealings, purchasing requirements, pricing policies and information, sales proposals, volume and discounting variables, customer contract terms, packaging arrangements, timing considerations, training techniques and strategies, and other confidential financial information concerning the customers the Individual Defendants' serviced, profiled, supervised, and/or learned during their employment with Plaintiff;

(b)     transmitting verbally, in writing, or otherwise, to or on behalf of themselves and/or their new employer, customers' names, addresses, account related information, and other information contained in the records of Zeno/TLC and described herein above;

(c)     soliciting and/or preparing to solicit Plaintiff's customers to terminate their relationship with Plaintiff and conduct business with and/or through Impact Networking;

(d)     soliciting and encouraging Plaintiff's employees to leave their employment with Plaintiff and/or to join Defendants in their capacities as employees and/or representatives of Impact Networking, Plaintiff's direct competitor; and

(e)     other such acts contrary to the terms, conditions, and provisions of the employment and post-employment obligations owed to Plaintiff by the Individual Defendants (*see generally* **Exhibit A** attached hereto), and Plaintiff's trade secret, property, proprietary and other rights.

**ANSWER:**

Defendant denies the allegations in this paragraph.

105.    By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a preliminary injunction against Defendants.

**ANSWER:**

Defendant denies the allegations in this paragraph.

106.    Unless Defendants are preliminarily enjoined from the foregoing conduct, Plaintiff will be irreparably harmed by:

(a)     Disclosure of trade secrets, customer lists, business methods and strategies, and other confidential information that are solely the property of Plaintiff and its clients;

(b)     Loss of confidentiality of the information contained in customers' records, loss of confidentiality of customers' business and financial dealings, loss of confidence and trust of customers, loss of customers' goodwill, and loss of business reputation; and

(c)     Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

107.    Plaintiff has no adequate remedy at law.

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.  To the extent

an answer is required, this allegation is denied.

108.    The balancing of the harms and the public interest also strongly militate in favor of injunctive relief.

**ANSWER:**

This paragraph presents a legal conclusion to which no answer is required.  To the extent

an answer is required, this allegation is denied.

### COUNT I

### BREACH OF CONTRACT AGAINST INDIVIDUAL
### DEFENDANTS' COPELAND AND VAUGHAN

109.    The allegations of Paragraphs 1 through 108 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

110.    The Copeland and Vaughan Agreements are valid and enforceable contracts, and Plaintiff has succeeded to the rights with respect to the agreements.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

111.    Zeno performed or tendered performance under the Copeland and Vaughan Agreements by employing Copeland and Vaughan and providing them with confidential and proprietary business information, including information regarding products, methodology, confidential pricing and sales information, trade secrets, business practices, marketing plans, customer lists and contact information, and other sensitive business information, and by satisfying all other conditions precedent to enforcement of the agreements.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

112.    Defendants Copeland and Vaughan have breached their obligations under the Copeland and Vaughan Agreements, including but not limited to by providing Confidential Information (as that term is defined in the Agreements) to Impact Networking; by soliciting and recruiting Plaintiff's employees to Impact Networking, and/or aiding Impact Networking in seeking to hire Plaintiff's employees; by soliciting and contacting Plaintiff's existing and/or prospective customers and clients; and/or by otherwise violating their obligations under the agreements. (*See* **Exhibit A-4** and **Exhibit A-5** at ¶ II).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

113.    As a direct result of Copeland's and Vaughan's breaches of contract, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

## COUNT II

### BREACH OF CONTRACT AGAINST INDIVIDUAL DEFENDANTS ROBERTS, FIGUEROA, AND WALKER

114.    The allegations of Paragraphs 1 through 113 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

115.    The Roberts Agreement, Figueroa Agreement, and the Walker Agreement are valid and enforceable contracts.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

116. Plaintiff performed or tendered performance under the aforementioned agreements by employing Roberts, Figueroa, and Walker, and providing them with confidential and proprietary business information, including information regarding products, methodology, confidential pricing and sales information, trade secrets, business practices, marketing plans, customer lists and contact information, and other sensitive business information, and Plaintiff has otherwise satisfied all conditions precedent to enforcement of the agreements.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

117. Roberts, Figueroa, and Walker have breached their respective agreements by retaining or misappropriating for their own benefit Confidential Information (as that term is defined in the Agreement) and trade secrets belonging to Plaintiff; soliciting and contacting Plaintiff's existing and prospective customers and clients; and/or otherwise breaching the terms of the agreements. (*See* **Exhibit A-1**, **Exhibit A-2**, and **Exhibit A-3**).

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

118. As a direct result of Roberts', Figueroa, and Walker's breaches of contract, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

## COUNT III

## BREACH OF CONTRACT AGAINST INDIVIDUAL DEFENDANT RANDLE

119. The allegations of Paragraphs 1 through 118 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

120.    The Randle Agreement is a valid and enforceable contract.

**ANSWER:**

Defendant denies the allegations in this paragraph.

121.    Plaintiff performed or tendered performance under the Randle Agreement by employing Randle and providing her with confidential and proprietary business information, including information regarding products, methodology, confidential pricing and sales information, trade secrets, business practices, marketing plans, customer lists and contact information, and other sensitive business information, and Plaintiff has otherwise satisfied all conditions precedent to enforcement of the Randle Agreement.

**ANSWER:**

Defendant denies the allegations in this paragraph.

122.    Randle has breached Section 7 of the Randle Agreement by, among other things, retaining or misappropriating for his own benefit Confidential Information (as that term is defined in the agreement) and trade secrets belonging to Plaintiff; soliciting and seeking to hire and/or aiding Impact Networking and Impact Texas in the hiring of Plaintiff's employees; and/or otherwise violating her obligations under the agreement. (*See* **Exhibit A-6**).

**ANSWER:**

Defendant denies the allegations in this paragraph.

123.    As a direct result of Randle's breach, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS
### (Texas Civil Practice and Remedies Code, § 134A.001, et seq.)

124.    The allegations of Paragraphs 1 through 123 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

125.     The books, records, and computerized databases of Plaintiff, the confidential information contained therein, including the identity of Plaintiff's customers, their names and addresses, agents and account managers, business and financial dealings, the transactions in their Zeno Imaging and/or TLC accounts, purchase requirements, purchasing history and patterns, servicing terms and conditions, Plaintiff's strengths and weaknesses with its customers, and other business and financial information concerning Plaintiff's products, prices, profitability considerations, marketing strategies, leasing terms, vendors, costs, training techniques, distribution and delivery systems, and/or other market considerations, are trade secrets subject to protection under the Texas Uniform Trade Secrets Act, Texas Civil Practice and Remedies Code, § 134A.001, *et seq.*

**ANSWER:**

Defendant denies the allegations in this paragraph.

126.     The books, records, and computerized databases of Plaintiff, and the confidential information contained therein, is a compilation of information that derives independent economic value by not being accessible, through proper means, to third parties or competitors such as the Individual Defendants and/or Defendant Impact Networking and/or Impact Texas and/or Innovative Orange, who can profit from the explicit and/or implicit and/or intentional and/or inevitable use or disclosure of the information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

127.     Plaintiff has taken reasonable measures under the circumstances to maintain the secrecy of this information by, among other things, limiting its dissemination; expressly advising its employees that such information is confidential and not to be disclosed for any purpose other than authorized business; by requiring employees to acknowledge the confidentiality of such information in Plaintiff's Employee Handbook; and by requiring employees like the Individual Defendants to sign agreements by which they promise not to use or disclose such information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

128.     Upon information and belief, Defendants unlawfully misappropriated trade secrets belonging to Plaintiff by unlawfully retaining, disclosing, and/or using certain trade secrets to unlawfully compete with Plaintiff. Defendants' foregoing conduct constitutes an actual, planned, and/or inevitable misappropriation and misuse of Plaintiff's confidential, trade secret information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

129.     Defendants knew and know that the confidential information disclosed and/or utilized/anticipated to be used by them constitutes trade secrets belonging to Plaintiff and that they are not authorized to possess or use those secrets for any purpose other than authorized business for Plaintiff's benefit.

**ANSWER:**

Defendant denies the allegations in this paragraph.

130.     Impact Texas, Impact Networking, and Innovative Orange were aware that the Individual Defendants had a confidential relationship with Plaintiff and that they are in possession of Plaintiff's confidential and trade secret information that has been wrongfully disclosed.

**ANSWER:**

Defendant denies the allegations in this paragraph.

131.     Moreover, Defendants Copeland, Vaughan and Innovative Orange were aware that under the 2019 ZDS and Innovative Orange Asset Purchase Agreement, Innovative Orange only acquired the intellectual property used "exclusively" in ZDS's professional services business-not all of the intellectual property belonging to ZDS. The information retained by Defendants Copeland, Vaughan, and Innovative Orange relate to *all* aspects of Plaintiff's business, including Zeno's customers, prospective customers, pricing, pricing methodologies, individual employee sales performance, quota attainment, marketing and growth strategies related is trade secret. The foregoing materials do not by any stretch "exclusively" relate to the Professional Services Business of ZDS and the 22 customers referenced in the IO APA. Therefore, Defendants Copeland, Vaughan, and Innovative Orange are aware that they were and/or remain in possession of Plaintiff's confidential and trade secret information that has been unlawfully disclosed.

**ANSWER:**

Defendant denies the allegations in this paragraph.

132.     As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## COUNT V

## MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS
### (Defend Trade Secret Act, 18 U.S.C. § 1832, et seq.)

133.     The allegations of Paragraphs 1 through 132 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

134.    The books, records, and computerized databases of Plaintiff, the confidential information contained therein, including the identity of Plaintiff's customers, their names and addresses, agents and account managers, business and financial dealings, the transactions in their Zeno Imaging and/or TLC accounts, purchase requirements, purchasing history and patterns, servicing terms and conditions, Plaintiff's strengths and weaknesses with its customers, and other business and financial information concerning Plaintiff's products, prices, profitability considerations, marketing strategies, leasing terms, vendors, costs, training techniques, distribution and delivery systems, and/or other market considerations, are trade secrets subject to protection under the Defend Trade Secret Act, 18 U.S.C. § 1832, et seq.

**ANSWER:**

Defendant denies the allegations in this paragraph.

135.    The books, records, and computerized databases of Plaintiff, and the confidential information contained therein, is a compilation of information that derives independent economic value by not being accessible, through proper means, to third parties or competitors such as the Individual Defendants and/or Defendant Impact Networking and/or Impact Texas and/or Innovative Orange, who can profit from the explicit and/or implicit and/or intentional and/or inevitable use or disclosure of the information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

136.    Plaintiff's trade secrets are related to a product or service used in or intended for use in interstate commerce. Plaintiff's business is national and extends beyond Texas; it includes customers with operations in numerous states.

**ANSWER:**

Defendant denies the allegations in this paragraph.

137.    Plaintiff has taken reasonable measures under the circumstances to maintain the secrecy of this information by, among other things, limiting its dissemination; expressly advising its employees that such information is confidential and not to be disclosed for any purpose other than authorized business; by requiring employees to acknowledge the confidentiality of such information in Plaintiff's Employee Handbook; and by requiring employees like the Individual Defendants to sign agreements by which they promise they will not use or disclose such information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

138.     Upon information and belief, Defendants unlawfully misappropriated trade secrets belonging to Plaintiff by unlawfully retaining, disclosing, and/or using certain trade secrets to unlawfully compete with Plaintiff. The Defendants' foregoing conduct constitutes an actual, planned, and/or inevitable misappropriation and misuse of Plaintiff's confidential, trade secret information.

**ANSWER:**

Defendant denies the allegations in this paragraph.

139.     Defendants knew and know that the confidential information disclosed and/or utilized/anticipated to be used by them constitutes trade secrets belonging to Plaintiff and that they are not authorized to possess or use those secrets for any purpose other than authorized business for Plaintiff's benefit.

**ANSWER:**

Defendant denies the allegations in this paragraph.

140.     Impact Texas, Impact Networking, and Innovative Orange were aware that the Individual Defendants had a confidential relationship with Plaintiff and that they are in possession of Plaintiff's confidential and trade secret information that has been wrongfully disclosed.

**ANSWER:**

Defendant denies the allegations in this paragraph.

141.     Moreover, Defendants Copeland, Vaughan, and Innovative Orange were and are aware that under the 2019 Innovative Orange Assignment Agreement, Innovative Orange only acquired the intellectual property used *exclusively* in ZDS' professional services business--not *all* of the intellectual property belonging to ZDS, which was previously sold to Visual Edge under its 2018 APA with ZDS. Yet all of the information collected, stored, and retained by Defendants Copeland, Vaughan, and Innovative Orange, both during and following Copeland's and Vaughan's employment with Zeno, relate to all aspects of Plaintiff's business. This information includes: Plaintiff's customers, prospective customers, pricing, pricing methodologies, individual employee sales performance, quota attainment, marketing and growth strategies, and therefore constitute trade secrets. The foregoing materials do not by any stretch exclusively relate to the Professional Services Business of ZDS and the 22 customers referenced in the IO APA. Therefore, Defendants Copeland, Vaughan, and Innovative Orange are aware that they were and/or remain in possession of Plaintiff's confidential and trade secret information that has been unlawfully disclosed.

**ANSWER:**

Defendant denies the allegations in this paragraph.

142.   As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and has suffered damages in an amount that is not presently calculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## COUNT VI

### BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY AGAINST INDIVIDUAL DEFENDANTS COPELAND AND VAUGHAN

143.   The allegations of Paragraphs 1 through 142 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

144.   Defendants Copeland and Vaughan were trusted executives in a confidential relationship with Zeno, and thus owed fiduciary duties to Zeno. Copeland and Vaughan violated their common law duty of loyalty and fiduciary duty arising under their employment relationship with Zeno in that, while employed by Zeno, upon information and belief Copeland and Vaughan schemed to recruit others to leave Plaintiff's employment and join them in their competitive employment, and/or schemed with others, to affirmatively or inevitably use and/or disclose to and/or on behalf of Plaintiff's competitor the confidential information contained in Plaintiff's customer and business records, to misappropriate Plaintiff's trade secrets and confidential business information, and to otherwise act in a manner harmful to the employer whose best interests Copeland and Vaughan were under a duty to promote.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

145.   In addition, Copeland also breached his fiduciary duties, including his duty of loyalty, duty to refrain from self-dealing, duty to act with integrity, and duty of full disclosure by submitting and obtaining approval for payment of costs and expenses to be paid by Plaintiff related to Innovative Orange's acquired Laserfiche contracts when in fact such expenses should have been paid directly by ZDS and/or Innovative Orange.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

146.    Copeland and Vaughan willfully, intentionally and with actual malice breached their fiduciary duties. As a consequence, Plaintiff has been and/or will be irreparably harmed and have suffered and/or will suffer damages that are presently incalculable.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

## COUNT VII

### INTERFERENCE WITH ACTUAL AND PROSPECTIVE
### BUSINESS RELATIONS AGAINST THE INDIVIDUAL DEFENDANTS
### AND DEFENDANTS IMPACT TEXAS AND IMPACT NETWORKING

147.    The allegations of Paragraphs 1 through 146 incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

148.    Upon information and belief, Defendants have willfully and intentionally interfered with Plaintiff's actual business relationships and/or those business relationships for which Plaintiff had a reasonable probability of entering into a contractual relationship, without justification, and by the utilization of independently tortious or unlawful acts, including, inter alia, by using or planning to use confidential information, affirmatively or inevitably, concerning the identity and purchasing needs and/or histories of Plaintiff's customers, by using or planning to use the confidential prices and service agreement terms Plaintiff employed with its customers, by recruiting and attempting to recruit Plaintiff's employees to work for Impact Texas in the same area as Plaintiff's offices for an improper purpose, by representing Impact Texas and/or Impact Networking in sales efforts in violation of non-competition and/or non-solicitation and non-disclosure agreements, by actively facilitating the cancellation of Plaintiff's customer contracts, and by otherwise using, affirmatively or inevitably, the confidential information concerning Plaintiff's customers to obtain an improper competitive advantage. The foregoing unlawful and intentional acts by Defendants were calculated to cause damage to Plaintiff in its lawful business and done with a conscious desire to prevent Plaintiff from forming new customer and client relationships, and have resulted in actual and anticipated damage or loss to Plaintiff which Defendants knew or were substantially certain would occur.

**ANSWER:**

Defendant denies the allegations in this paragraph.

149.    As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and have suffered and/or will suffer damages in an amount that is presently incalculable.

**ANSWER:**

Defendant denies the allegations in this paragraph.

**COUNT VIII**

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
AGAINST INDIVIDUAL DEFENDANTS COPELAND AND VAUGHAN,
AND DEFENDANTS IMPACT TEXAS AND IMPACT NETWORKING**

150.     The allegations of Paragraphs 1 through 149 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

151.     Individual Defendants Copeland, Vaughan, and Defendants Impact Texas and Impact Networking, have intentionally sought to interfere with the performance of the contractual obligations owed to Plaintiff by Plaintiff's former employees, including, but not limited to, Individual Defendants Randle, Roberts, Figueroa, and Walker (the "Former Employees"). With knowledge of their respective agreements, Impact Texas and Impact Networking tortiously interfered with the former employees' agreements with Plaintiff by knowingly and intentionally soliciting the Former Employees to work for Impact Networking and/or Impact Texas in positions that require them and/or will inevitably lead them to violate their agreements, inducing them to break their employment with Plaintiff and breach their agreements to Plaintiff's detriment and damage, to the benefit of Impact Texas and Impact Networking and/or with the intent to injure Plaintiff.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

152.     Defendants' actions have been and are being taken deliberately and without privilege or justification, and have resulted or have the potential to result in the loss of several of Plaintiff's key employees and repeated violations of the Former Employees' agreements with Plaintiff.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the

allegations in this paragraph are denied.

153.    As a consequence of the foregoing, Plaintiff has been and/or will be irreparably harmed and have suffered and/or will suffer damages in an amount that is presently incalculable.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

## COUNT IX

## DECLARATORY JUDGMENT AGAINST INNOVATIVE ORANGE AND COPELAND

154.    The allegations of Paragraphs 1 through 153 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

155.    "[A]ny court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C.A. § 2201; *also see* Tex. Civ. Prac. & Rem. Code § 37.

**ANSWER:**

This paragraph is a legal conclusion to which no response is required.

156.    Pursuant to the Federal and Texas acts, Plaintiff seeks a determination of the parties' respective rights, status, and obligations with regard to the VET-ZDS APA and the IO APA. As demonstrated above, an actual, substantial, and justiciable controversy exists among the parties concerning their rights, status and other legal obligations related to the VET-ZDS APA and the IO APA.

**ANSWER:**

This paragraph is directed to another party.  To the extent an answer is required, the allegations in this paragraph are denied.

157.    Specifically, in contradiction with the plain terms of the VET-ZDS APA, the IO APA, and the actual business practices of Plaintiff, Defendant Copeland has asserted that Innovative Orange's purchase (for $10) in early 2019 of all of the "intellectual property used exclusively in [Zeno Digital's] professional services business" included any and all ZDS intellectual property related to *all other aspects* of ZDS's business *that had already been sold* to Visual Edge for millions of dollars in October 2018.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

158. Because VET-ZDS APA and subsequent IO APA clearly establish that Innovative Orange did not acquire in its 2019 acquisition of ZDS's Professional Services Business all of Zeno's trade secrets and intellectual property, the Court should declare that Innovative Orange did not purchase (for $10) all aspects of ZDS's business and intellectual property that had already been sold to Visual Edge.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

159. Moreover, because Plaintiff did not acquire and explicitly excluded the Professional Services Business assets and liabilities from the October 2018 VET-ZDS APA, the Court should declare that Visual Edge is not liable for the $249,451.71 in Lascherfiche related fees and expenses demanded by Innovative Orange in the April 2021 IO Demand.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

## COUNT X

## FRAUD, CONSTRUCTIVE FRAUD, AND NEGLIGENT MISREPRESENTATION AGAINST COPELAND

160. The allegations of Paragraphs 1 through 159 are incorporated herein by reference with the same force and effect as if set forth in full below.

**ANSWER:**

Defendant restates the preceding answers as if fully set forth herein.

161. By making material false and misleading statements, and/or remaining silent when he had a duty to speak, Copeland, in the course of his employment and with the purpose that Plaintiff rely on the statements, intentionally or negligently misrepresented facts, failed to disclose facts and supplied false information to Visual Edge, upon which it justifiably relied to its detriment. These materials representations were made with knowledge of their falsity when made or with

negligent indifference as to their veracity when made and proximately caused damages to Plaintiff in an amount in excess of the jurisdictional limits of this Court.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

162.    Moreover, as noted above, Copeland had fiduciary duties to disclose materials facts and to not make materials misrepresentations relating to Zeno and/or Visual Edge's businesses. Copeland breached these duties, and as a result, constructively defrauded Plaintiff and has proximately caused damages in excess of the jurisdictional limits of this Court.

**ANSWER:**

This paragraph is directed to another party. To the extent an answer is required, the allegations in this paragraph are denied.

## XI.

163.    All conditions precedent to the recovery of the relief requested by Plaintiff herein have occurred.

**ANSWER:**

Defendant denies the allegations in this paragraph.

## PRAYER FOR RELIEF

**WHEREFORE,** Defendant seeks judgment in its favor and against Plaintiff and such further relief as deemed just and appropriate.

## AFFIRMATIVE DEFENSES

Defendant, by and through its attorneys, Howard & Howard Attorneys PLLC, submits the following as its affirmative defenses:

1.    Plaintiff's trade secret claims fail because Plaintiff possessed no trade secret information subject to protection.

2.      Plaintiff's trade secret claims fail because to the extent Plaintiff possessed any trade secret, Plaintiff did not take reasonable measures to protect such information.

3.      Plaintiff's DTSA claim fails for lack of any nexus to interstate commerce.

4.      Plaintiff's contractual claims fail because any underlying contract lacked consideration and is invalid.

5.      Plaintiff's contractual claims fail because Plaintiff and Defendant had no enforceable contract, any non-compete or non-solicitation agreement Defendant may have been subject to was not assignable, and any such agreement has expired by its own terms.

6.      In the alternative, Plaintiff's first in time material breach of any contract, by among other things, failing to perform, pay compensation, and other actions/inactions renders the contract unenforceable.

7.      Plaintiff's claims fail as contrary to public policy.

8.      Plaintiff's claims fail because the agreement on which it sues is invalid and void.

9.      Plaintiff has failed to identify any business relationship interfered with by Defendant.

10.     Plaintiff cannot establish malice or intentional conduct on the part of Defendant in order to support its claims.

11.     Plaintiffs' claims are barred, in whole or in part, by Plaintiff's own unclean hands, illegal acts, equal responsibility, and/or the doctrine of *in pari delicto*.

12.     Plaintiff is required to pay Defendants attorneys' fees and costs in defending against their baseless action.

13.     Defendant reserves the right to amend his answer and assert further defenses as may be necessary and further discovery warrants.

**JURY DEMAND**

Defendant hereby demands a jury trial on all issues so triable.


Dated: June 29, 2021                         By: /s/ David C. Van Dyke
                                             David C. Van Dyke
                                             **ATTORNEY-IN-CHARGE**
                                             *(admitted pro hac vice)*
                                             Illinois State Bar No. 6204705
                                             California State Bar No. 294892
                                             *dvd@h2law.com*
                                             HOWARD & HOWARD ATTORNEYS PLLC
                                             200 S. Michigan Avenue, Suite 1100
                                             Chicago, Illinois 60604
                                             312-456-3641 / 312-939-5617 *fax*

                                             and

                                             Edwin Buffmire
                                             State Bar No. 24078283
                                             Federal ID 2312143
                                             *ebuffmire@jw.com*
                                             JACKSON WALKER, LLP
                                             2323 Ross Avenue, Suite 600
                                             Dallas, Texas 75201
                                             214-953-6000 / 214-953-5822 *fax*

                                             and

                                             Colton Tobias
                                             State Bar No. 24115863
                                             Federal ID 24115863
                                             *ctobias@jw.com*
                                             JACKSON WALKER LLP
                                             1400 McKinney Street, Ste. 1900
                                             Houston, Texas 77010
                                             713-752-4200 / 713-752-4221 *fax*

                                             **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2021, a true and correct copy of the foregoing document was served upon all counsel entitled to receive such notice via the Court's electronic filing system.

_/s/ David C. Van Dyke_

4839-7485-0032