United States District Court
Southern District of Texas
**ENTERED**
October 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **VISUAL EDGE IT, INC.,** *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-04220 |
| § | |
| **CASEY VAUGHAN,** *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment. (Doc. 149.) At a September 19, 2022 hearing, the Court denied Defendants' Motion with respect to Counts VI, VII, and VIII. It reserved judgment on Count I and requested further briefing as to whether the non-compete and non-disclosure agreements between Defendants and their former employer were assignable to Plaintiff after it purchased the employer's company.

After considering the Motion and applicable law, the Court determines that Defendants' Motion for Partial Summary Judgment with respect to Count I must be **DENIED**.

**I.  BACKGROUND**

   **A.  Factual Background**

Defendants Casey Vaughan and Scott Copeland previously served in high-level executive roles, including most recently as vice presidents, for Zeno Digital Solutions ("ZDS"), an office equipment and services company. (Doc. 110-A ¶¶ 39-41.) In their positions developing sales efforts and customer relationships, Copeland and Vaughan had access to ZDS's customer lists, sale plans, and other confidential information. *Id.* ¶¶ 45-48.

While employed by ZDS, both Copeland and Vaughan signed a contract titled "Non-Disclosure and Non-Compete Agreement" ("the Agreements"). The Agreements, made "[i]n exchange for the opportunities Employee will be provided by Employer," and "as a condition of Employee's employment," consist of thirteen clauses detailing employees' non-disclosure, non-compete, and non-solicitation obligations and procedures. (Docs. 110-A-4; 110-A-5.) The Agreements are identical and do not refer to the specific job description of any individual employee. They also do not contain assignment clauses. In addition to these agreements, ZDS required employees to acknowledge and execute the Employee Handbook. (Docs. 110-A ¶ 70; 110-B.)

In late 2018, Plaintiff Visual Edge, Inc. ("Visual Edge") purchased ZDS, including all ZDS's rights and obligations, intellectual property, and investments. (Doc. 110-A ¶ 34.) Among the assets acquired by Visual Edge were "all rights that [ZDS] may have under all contracts, agreements . . . relating to the Business." (Doc. 162 at 5.) Visual Edge did business as Zeno Imaging at some of its locations. (Doc. 110-A ¶ 36.)

Visual Edge asked employees to sign new agreements after it acquired ZDS. Other individual Defendants signed non-disclosure and non-compete agreements with Visual Edge and its affiliates. (Docs. 110-A ¶¶ 71-72; 110-A-1; 110-A-2; 110-A-3; 110-A-6.) Vaughan and Copeland refused to sign new agreements. (Doc. 149 at 11-12.) Nevertheless, both men continued in their high-level roles with Visual Edge.

Vaughan testified at his deposition that he did not think he had a non-compete agreement with Visual Edge. He also testified that he refused to sign such an agreement when asked. (Doc. 149-1, Vaughan Deposition Transcript, 98:15-99:20.)

Vaughan resigned from Visual Edge in December 2019 and Copeland in September 2020. In November 2020, both began working for Impact Texas, Plaintiff's competitor. (Doc. 110-A ¶¶ 43-44.) Plaintiff alleges that Copeland and Vaughan, with the approval of Impact Networking and Impact Texas, began to solicit key Visual Edge personnel in July 2020. *Id.* ¶ 82. At least five former Zeno employees, including the other individual defendants, resigned to join Impact Networking in November and December 2020. *Id.* ¶ 83. Plaintiff also alleges that Defendants used proprietary information to solicit customers and develop marketing strategies. *Id.* ¶ 84.

### B. Procedural History

In December 2020, Plaintiff sent individual Defendants cease-and-desist letters. *Id.* ¶ 85. Copeland and Vaughan denied they owed any post-employment obligations to Visual Edge. *Id.* ¶¶ 89-90. Plaintiff then filed the present action alleging breach of contract, misappropriation of trade secrets, breach of duty of loyalty and fiduciary duty, interference with business relations, and tortious interference with contractual relations.

Defendants filed a Motion for Partial Summary Judgment on four of Plaintiff's counts:

- Count I: Breach of contract against Defendants Copeland and Vaughan
- Count VI: Breach of duty of loyalty and fiduciary duty against Defendants Copeland and Vaughan
- Count VII: Interference with actual and prospective business relations against all individual Defendants and Defendants Impact Texas and Impact Networking
- Count VIII: Tortious interference with contractual relations against Defendants Copeland, Vaughan, Impact Texas, and Impact Networking

At its motion hearing, the Court denied Defendants' Motions with respect to Counts VI, VII, and VIII. It requested further briefing as to whether the Agreement between Defendants and their former employer was assignable to Visual Edge after it purchased ZDS.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal citation omitted). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Whether the Contract Was Assignable

Plaintiff alleges that Defendants Copeland and Vaughan breached non-disclosure and non-compete agreements with Visual Edge by providing confidential information to Impact Networking and soliciting Plaintiff's employees and customers to the competitor company. (Doc. 110-A ¶¶ 110-12.) In Texas, the elements of a breach of contract claim are "(1) the existence of a

valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Binh Hoa Le v. Exeter Finance Corporation*, 990 F.3d 410, 415 (5th Cir. 2021) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

Defendants challenge the first element of the claim, arguing that Visual Edge did not have a valid contract with Copeland and Vaughan. The parties do not dispute that neither Defendant signed any separate non-disclosure, non-compete, or non-solicitation contract with Visual Edge. Nor do they disputed that both declined to sign a new agreement with Visual Edge when asked. Rather, the issue is whether the Agreements between Defendants and ZDS were assigned to Visual Edge when it purchased ZDS.[1]

Texas law presumes contracts are freely assignable. *Dittman v. Model Baking Co.*, 271 S.W. 75 (Tex. Civ. App. 1925). However, an exception exists where a contract is for personal services. *Id.*; *see also In re FH Partners, L.L.C.*, 335 S.W.3d 752, 761-62 (Tex. App. 2011). Personal service contracts can only be assigned with the consent of the employee. The fundamental reason for the exception is to ensure that "a man has a right to choose the individuals with whom he will deal." *Dittman*, 271 S.W. at 77; *see also Menger v. Ward*, 87 Tex. 622, 626 (1895) ("Rights arising out of a contract can not be transferred if they involve a relation of personal confidence, such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.")

---

[1] Defendants argue, in the alternative, that the Agreement terms are for a period of two years after the end of Employees' employment and that, accordingly, Vaughan's obligations would have terminated in December 2021. (Doc. 149 at 19.) However, this does not eliminate Plaintiff's claims against Vaughan for his actions through December 2021.

The personal services exception applies "when a contract relies on the parties' personal trust, confidence, skill, character, or credit" or where the position requires extraordinary skill. *Intertek Asset Integrity Mgmt., Inc. v. Dirksen*, 2021 WL 1047055 at *6 (Tex. App. Mar. 18, 2021). When determining whether the exception applies, courts look to whether "the rights [the agreement] conveys to another party are a type that Texas law regards as 'involving a relation of personal confidence' such that the other party should not be permitted to unilaterally substitute another for itself through assignment." *Id.* at *4 (quoting *In re FH Partners L.L.C.*, 335 S.W.3d at 765). Courts have found that corporate executives, by employing "general skills, knowledge, personal relationships, and personal goodwill developed over [] decades of experience in the industry," provide personal services. *Intertek*, 2021 WL 1047055, at *6; *see also Nutt v. Members Mut. Ins. Co.*, 474 S.W.2d 575, 576 (Tex. Civ. App. 1971) (categorizing executive vice president of insurance company's employment contract as a personal service contract).

Texas lower courts have repeatedly found that restrictive covenants are not themselves personal service contracts. *See, e.g.*, *TPS Freight Distributors, Inc. v. Texas Com. Bank-Dallas*, 788 S.W.2d 456, 459 (Tex. App. 1990) (distinguishing personal service contracts from those in which the contractor agreed to "*refrain* from doing something"); *Thames v. Rotary Eng'g Co.*, 315 S.W.2d 589, 590 (Tex. Civ. App. 1958) ("[W]e do not find any inhibition against the assignment or transfer of this type of covenant or agreement. These are not agreements to work, but are restrictive agreements promising not to compete. It has been held that such are transferrable or assignable as assets."); *see also In re Wofford*, 608 B.R. 494, 497 (Bankr. E.D. Tex. 2019) ("The former requires affirmative actions by the employee, whereas the latter requires only that they refrain from certain actions.") Courts beyond Texas also recognize this distinction. *See, e.g.*, *Symphony Diagnostic Servs. No. 1 Inc. v. Greenbaum*, 828 F.3d 643, 647 (8th Cir. 2016) ("[T]he

fact that [the parties] signed the non-compete and confidentiality agreements in consideration for continued employment did not transform those agreements into personal services contracts, because the agreements imposed no obligation on them to take any affirmative action."); *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 929 (6th Cir. 2000) (internal citation omitted) ("A personal services contract, however, requires that one of the parties be bound to render personal services. In contrast, a noncompetition clause only requires that one of the parties abstain from certain activities."); *In re Andrews*, 80 F.3d 906, 912 (4th Cir. 1996) ("Although the Thirteenth Amendment prohibits a court from specifically enforcing a personal service contract, an agreement not to compete is specifically enforceable if it is reasonable.").

Defendants rely heavily on an unreported 2021 Texas Court of Appeals decision, which found that a corporate vice president's contract with his former employer was integrated into an employment contract for personal services and was, therefore, unassignable. *Intertek Asset Integrity Mgmt., Inc. v. Dirksen*, 2021 WL 1047055 (Tex. App. Mar. 18, 2021). The court's analysis focuses on language in the contract "conferring trust and confidence" on the defendant:

> [T]he covenant itself begins with, "Because you will now be working in a position of trust and confidence with access to and use of this information . . ." As previously stated, the personal services exception applies when a contract relies on the parties' personal trust, confidence, skill, character, or credit.

*Id.* at *6; *see also Winsupply E. Houston v. Blackmon*, 2021 WL 5504756 (S.D. Tex. Nov. 22, 2021) (relying on *Intertek* to find that non-compete and non-solicitation provisions in an employment agreement were unassignable as ancillary to an employment contract for personal services).

Defendants urge this Court to read *Intertek* to stand for the proposition that restrictive covenants associated with personal services are not assignable. However, this interpretation would contravene longstanding caselaw distinguishing between contracts requiring the rendering of

Page **7** of **11**

personal services and those requiring only the abstention of certain actions. It also ignores the separate policy interests behind the two principles—ensuring individuals have free choice regarding how and for whom they perform labor versus protecting businesses from employees taking their clients and intellectual property elsewhere. In light of this distinction, the Court understands *Intertek* to indicate: (1) the specific employment contract between the executive engineer and his employer was a personal service contract; and (2) the non-compete provisions could not be severed from the remainder of the contract.

*Intertek* does not necessitate a finding that the Agreements are themselves personal services contracts, even if Defendants' jobs constituted personal services. Defendants' Agreements can be distinguished from the contract at issue in *Intertek*. In *Intertek*, the restrictive covenants were integrated into a broader employment agreement. The contract expressly incorporated an offer letter. *Id.* at *6. Here, the primary nature of the Agreements was to constrain employees' use of confidential information rather than to create an employment contract.

The plain language of the Agreements supports the conclusion that they can be characterized as restrictive covenants and not as personal service contracts. The contracts are titled "Non-Disclosure and Non-Compete Agreement." All provisions within the Agreements revolve around non-disclosure, non-compete, and non-solicitation restrictions, as well as intellectual property rights. While Defendants entered the contracts "[i]n exchange for the opportunities Employee will be provided by Employer," and "as a condition of Employee's employment," the contractual language does not reference the specific requirements of employment. *See Symphony Diagnostic Servs. No. 1 Inc. v. Greenbaum*, 828 F.3d 643, 647 (8th Cir. 2016) ("[T]he fact that [the parties] signed the non-compete and confidentiality agreements in consideration for continued employment did not transform those agreements into personal services contracts."). Unlike the

contract at issue in *Intertek*, the Agreements do not reference positions of trust and confidence. Finally, no part of the contracts compels Defendants to perform labor for Plaintiff. Based on these factors, the Court finds the Agreements were not personal services contract and, therefore, were assignable to Visual Edge after its acquisition of ZDS.

### B. Whether the Contract Was Enforceable

Defendants suggest that the restrictive covenants are unenforceable unless they are, first, ancillary to a broader contract for employment and, second, reasonably limited. (Doc. 149 at 9.) Under Texas's Covenants Not to Compete Act, courts pursue a two-step process to "determine whether there is an 'otherwise enforceable agreement' between the parties, and, if so, . . . whether the covenant is 'ancillary to or part of' that agreement." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 773 (Tex. 2011) (citing TEX. BUS. & COM. CODE ANN. § 15.50 (West)). The Supreme Court of Texas has specifically upheld non-compete provisions ancillary to non-disclosure contracts. For example, in *Marsh*, the court stated that:

> Consideration for a noncompete that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill, satisfies the statutory nexus; and there is no textual basis for excluding the protection of much of goodwill from the business interests that a noncompete may protect.

*Id.* at 775. Likewise, in *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, the court found:

> [The employer's] implied promise and its actual provision to [Defendant] of access to confidential information satisfied the first requirement because the promise and provision of confidential information generated [the employer's] interest in preventing the disclosure of such information. In addition, [Defendant's] promise not to disclose any confidential information satisfied the second requirement because the client purchase provision was designed to hinder [his] ability to use the confidential information to compete against [his employer]. Therefore, the client purchase provision was "ancillary to or part of" the otherwise enforceable agreement when the otherwise enforceable contract was made, and the client purchase provision is enforceable under the Act.

289 S.W.3d 844, 852 (Tex. 2009) (internal citations omitted). Here, the non-compete clauses were provided in exchange for continued access to confidential information and ancillary to an otherwise enforceable contract governing the disclosure of confidential information.

Second, "the limitations of time, geographical area, and scope of activity [must be reasonable and] not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Evan's World Travel v. Adams*, 978 S.W.2d 225, 229 (Tex. Ct. App.). The Agreements provide that the employee cannot perform work on behalf of a customer or client for whom the employer provided services during the time of employment. They limit this restriction to two years and to the geographic territory in which the employee worked. (Doc. 110-A-4 § VII.) Texas courts have accepted similar constraints. *See, e.g.*, *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 603 (E.D. Tex. 2021) ("Texas courts routinely hold that two years is a reasonable duration for noncompete provisions."); *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App. 2009) (finding covenants limited *either* to certain clients or to geographic scope are sufficiently constrained). Lacking specific challenges, the Court finds the contract reasonable and not overly broad.

### C. Plaintiff's Alternative Arguments

Plaintiff offers alternative theories to establish Defendants' contractual obligations, including arguing that Defendants consented to the assignment of their Agreements to Visual Edge, and that Defendants' continued employment with Visual Edge constituted acquiescence to contract. For the reasons stated on the record in its September 19, 2022 hearing, the Court rejects Plaintiff's additional arguments.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that the Agreements were legally assignable to Visual Edge after its purchase of ZDS. A genuine issue of material fact remains as to whether Defendants breached these contractual duties. The Court **DENIES** Defendants' Motion for Partial Summary Judgment.

**IT IS SO ORDERED**.

Signed at Houston, Texas on October 13, 2022.

_____
Keith P. Ellison
United States District Judge